

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

**NO. 2-07-428-CR**

BILLY WAYNE TAYLOR                                            APPELLANT

V.

THE STATE OF TEXAS                                                STATE

------------

FROM THE 297TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I.  INTRODUCTION

Appellant Billy Wayne Taylor appeals his conviction for harassment of a public servant.  In two points, Taylor argues that the trial court erred by not declaring a mistrial when the prosecutor purportedly commented on his failure to testify during trial and that the evidence is legally and factually insufficient

---

[1] *See* Tex. R. App. P. 47.4.

to sustain his conviction because there was no evidence that the officer was exercising an official duty. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Officer Michael Tyler, dressed in his full police uniform, entered a Texaco station after filling up his squad car with gas. He got in the check-out line behind Taylor. Taylor told his girlfriend, who was in line with him, "mother-------bitch, get away from me." Hearing this exchange, Officer Tyler tapped Taylor on the shoulder and asked him to keep it down and to watch his language. Taylor responded, "I don't want to calm down, I just want that mother-------bitch away from me." Officer Tyler then asked Taylor to step outside; Taylor refused and said that he would not speak to the officer. After Taylor sat down at a video poker game in the store, Officer Tyler approached him and asked again if Taylor would step outside. Taylor obliged.

Once outside, Taylor asked the officer "what [his] problem was" and claimed that the officer had pulled him aside because he was black. Taylor refused to provide identification because he said he had done nothing wrong. He was visibly upset and angry, and he paced back and forth, raising his arms up and down. Officer Tyler took Taylor's actions as a threat and asked him to turn around and put his hands behind his back. The officer told Taylor that he was going to take him downtown to fingerprint him because he had refused to

2

identify himself. Officer Tyler testified at trial that because Taylor had refused to identify himself, he had the right to detain him. When Officer Tyler reached for Taylor's wrist, Taylor pulled away and shoved the officer in his chest with both hands. Officer Tyler testified that he then decided to arrest Taylor for assaulting a peace officer and that, after a struggle, he was able to detain Taylor, cuff him, and put him in his squad car.

Inside the squad car, Taylor told Officer Tyler that if he was going to go to jail, he was going to go to the hospital first. He began banging his head on the plexiglass divider in the car. Officer Tyler pulled Taylor out of the car and laid him on the ground. Officer Tyler struggled to keep Taylor down on the ground and under control. Taylor then spit in Officer Tyler's face; the spit got in the officer's mouth and eyes.

Officer Jose Vasquez arrived on the scene just before Taylor spit in Officer Tyler's face; he saw the pair wrestling on the ground and saw Taylor spit in Officer Tyler's face. Officer Vasquez took Taylor to the hospital and then to jail. Taylor was charged with harassment of a public servant. A jury found him guilty and, after he pleaded true to the enhancement paragraph contained in the indictment, the trial court sentenced him to twenty-five years' confinement.

3

### III. COMMENT ON TAYLOR'S FAILURE TO TESTIFY

In his first point, Taylor argues that the trial court erred by not declaring a mistrial because during the prosecutor's opening statement, she commented on Taylor's failure to testify. Taylor claims that the prosecutor's comment violated his state and federal constitutional rights against self-incrimination and article 38.08 of the code of criminal procedure. *See* U.S. Const. amend V; Tex. Const. art. I, § 10; Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005). The State argues that the prosecutor's remark was not a comment on Taylor's failure to testify and that, alternatively, any prejudice to Taylor was cured by the trial court's instruction to disregard the remark.

Near the end of the State's opening statement, the prosecutor stated, "Despite any motives that happened, which are not a part of the charges, despite any excuses which the defendant may bring, he broke the law." Defense counsel objected that this remark was an improper comment on an election to not testify, and the trial court instructed the jury to disregard it. The trial court then held a hearing outside the presence of the jury and denied defense counsel's motion for a mistrial.

4

**A. Standard of Review and Law on
Comments on Failure to Testify**

A comment on an accused's failure to testify violates the accused's state and federal constitutional privileges against self-incrimination. *Montoya v. State*, 744 S.W.2d 15, 34 (Tex. Crim. App. 1987) (op. on reh'g), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996); *Smith v. State*, 65 S.W.3d 332, 339 (Tex. App.—Waco 2001, no pet.). In addition, the Texas Code of Criminal Procedure provides that a defendant's failure to testify on his own behalf may not be held against him and that counsel may not allude to the defendant's failure to testify. Tex. Code Crim. Proc. Ann. art. 38.08.

When the trial court sustains an objection to improper argument and instructs the jury to disregard but denies a defendant's motion for a mistrial, the issue is whether the trial court abused its discretion by denying the mistrial. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). Only in extreme circumstances, when the prejudice caused by the improper argument is incurable, i.e., "so prejudicial that expenditure of further time and expense would be wasteful and futile," will a mistrial be required. *Id.; see Simpson v. State,* 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), *cert. denied*, 542 U.S. 905 (2004).

In determining whether the trial court abused its discretion by denying the mistrial, we balance three factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks), (2) curative measures, and (3) the certainty of conviction absent the misconduct. *Archie v. State*, 221 S.W.3d 695, 700 (Tex. Crim. App. 2007); *Hawkins*, 135 S.W.3d at 77; *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied*, 526 U.S. 1070 (1999). Except in the most blatant cases, an instruction to disregard a comment on an accused's failure to testify will cure any prejudicial effect caused by the improper comment. *Moore v. State*, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999), *cert. denied*, 530 U.S. 1216 (2000); *see Archie,* 221 S.W.3d at 700.

We presume the jury complied with an instruction to disregard improper jury argument. *See Wesbrook v. State*, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000), *cert. denied*, 532 U.S. 944 (2001). In assessing the curative effect of the court's instruction to disregard, the correct inquiry is whether the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that an instruction to disregard could not cure its prejudicial effect. *Faulkner v. State*, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g).

6

## B. No Abuse of Discretion by Denying Motion for Mistrial

Even assuming the prosecutor's remark in question was a comment on Taylor's failure to testify, the remark is not of such great magnitude to cause Taylor severe prejudice. *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77. As the State points out on appeal, by making the complained-of remark — that despite motives or excuses the defendant may bring, he broke the law — the prosecutor likely was intending to refer to the fact that Taylor would attempt to show that he had acted out of frustration that was exacerbated by Officer Tyler's actions.[2] Consequently, the remark was not a direct reference to Taylor's failure to testify, and the severity of the prosecutorial misconduct, if any, was minor. *See Archie*, 221 S.W.3d at 700; *Hawkins*, 135 S.W.3d at 77.

Regarding the second factor — the curative measures taken — the trial court cured any prejudice from the prosecutor's remark by immediately instructing the jury to disregard it. *See Hawkins*, 135 S.W.3d at 84; *Simpson*, 119 S.W.3d at 272. We presume that the jury complied with the instruction. *See Wesbrook*, 29 S.W.3d at 116; *see also Michaelwicz v. State*, 186 S.W.3d 601,

---

[2] In fact, during cross-examination of Officer Tyler, this is exactly what the defense attorney attempted to do, stating, "You've taken an upset man and have escalated the procedures and escalated the process to the point now he's on the ground and he's really upset, isn't he?"

620 (Tex. App.—Austin 2006, pet. ref'd) ("The jury is presumed to follow the trial court's instruction to disregard unless the comment is so prejudicial or extreme that the instruction was incapable of removing the harm.").

And finally, even without the comment, the State had a solid case against Taylor. Only two witnesses testified at trial—Officers Tyler and Vasquez. Both testified that Taylor spit on Officer Tyler, who was in full police uniform. *See* Tex. Penal Code Ann. § 22.11(a)(2) (Vernon Supp. 2008) (setting forth offense of harassment of public servant). And as detailed below, the evidence at trial demonstrated that Officer Tyler was lawfully discharging an official duty at the time of the incident. *See id.* Accordingly, there was evidence demonstrating likelihood of conviction. *See Hawkins*, 135 S.W.3d at 77.

Thus, weighing the appropriate factors, we hold that the trial court's instruction to disregard was effective and cured the prejudicial effect, if any, stemming from the prosecutor's comment made during opening argument. *See Simpson*, 119 S.W.3d at 272. Accordingly, we hold that the trial court did not abuse its discretion by denying Taylor's motions for mistrial. *See Hawkins*, 135 S.W.3d at 77. We overrule Taylor's first point.

## IV. LEGAL AND FACTUALLY SUFFICIENCY

In his second point, Taylor contends that the evidence is both legally and factually insufficient to show that Officer Tyler was performing an official duty

8

as required by Texas Penal Code section 22.11(a)(2).  *See* Tex. Penal Code

Ann. § 22.11(a)(2).

### A.  Harassment of a Public Servant

Section 22.11(a)(2) of the penal code provides that a person commits an

offense if, with the intent to assault, harass, or alarm, he

> causes another person the actor knows to be a public servant to
> contact the blood, seminal fluid, vaginal fluid, saliva, urine, or feces
> of the actor . . . while the public servant is lawfully discharging an
> official duty or in retaliation or on account of an exercise of the
> public servant's official power or performance of an official duty.

*Id.*  "Official duty" is not defined in the penal code.  But we find insight into this

phrase in the context of the offense of aggravated assault against a public

servant; that offense occurs when a person commits aggravated assault against

a person whom the actor knows to be a public servant while the public servant

is lawfully discharging an official duty.  *See* Tex. Penal Code Ann. § 22.02(b).

In the context of the offense of aggravated assault of a public servant,

the "lawful discharge" of official duties means that the public servant is not

criminally or tortiously abusing his or her office as a public servant by acts of,

for example, official oppression or violations of the civil rights of a person in

custody, or the use of unlawful, unjustified force.  *Hall v. State*, 158 S.W.3d

470, 474–75 (Tex. Crim. App. 2005); *Bell v. State*, 233 S.W.3d 583, 586

(Tex. App.—Waco 2007, pet. dism'd); *see Hughes v. State*, 897 S.W.2d 285,

9

298 (Tex. Crim. App. 1994), *cert. denied*, 514 U.S. 1112 (1995) (holding that whether officer's traffic stop was constitutionally reasonable is not relevant to determining if officer was acting in the lawful discharge of his duties); *Montoya*, 744 S.W.2d at 29 (holding that a lawful arrest was not required to demonstrate that officer was acting within lawful discharge of official duties). As long as a peace officer acts within his capacity as a peace officer, he acts within the lawful discharge of his official duties. *Hall*, 158 S.W.3d at 474. Courts look at the details of the encounter, such as whether the police officer was in uniform, on duty, and on regular patrol at the time of the assault. *Id.*

### B. Legal Sufficiency of the Evidence[3]

### 1. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

---

[3] Although Taylor combines his legal and factual sufficiency arguments in a single point, we will address them separately. *See Laster v. State*, 275 S.W.3d 512, 519 (Tex. Crim. App. 2009) (holding that appellate courts may not combine legal and factual sufficiency analyses).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

The sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would be one

that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik,* 953 S.W.2d at 240. However, we may not affirm a conviction based on legal or factual grounds that were not submitted to the jury. *Malik*, 953 S.W.2d at 238 n.3. The law as authorized by the indictment means the statutory elements of the charged offense as modified by the charging instrument. *See Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

### 2. *Legally Sufficient Evidence of Performance of Official Duty*

Here, Taylor does not challenge the sufficiency of the evidence to prove that he harassed Officer Tyler within the meaning of penal code section 22.11(a)(2). *See* Tex. Penal Code Ann. § 22.11(a)(2). Rather, Taylor contends that Officer Tyler was not lawfully discharging an official duty as required under that section because he "was abusive and using unjustifiable and unlawful force" when he put Taylor on the ground in handcuffs and pinned him down. Taylor concedes that the arrest was an official duty, but he argues that the abusive conduct of the officer was not.

The uncontradicted testimony showed that Taylor was distraught, visibly upset, and angry throughout his encounter with Officer Tyler. Officer Tyler

12

testified that when Taylor began banging his head against the plexiglass divider, he pulled him out of the car "[f]or his safety, so he wouldn't endanger himself." Officer Tyler testified that he wrestled on the ground with Taylor and tried to tell him "to calm down, stay still." Officer Vasquez testified that he saw Officer Tyler "in a struggle trying to hold down [Taylor] and keep him under control."

As long as Officer Tyler was not criminally or tortiously abusing his title as a public servant, he was performing the "lawful discharge" of his official duties. *See Hall*, 158 S.W.3d at 474–75. On appeal, Taylor argues that Officer Tyler's conduct was oppressive, abusive, and unjustified, pointing to penal code sections 9.51, 39.03, and 39.04 as support for his argument. *See* Tex. Penal Code Ann. §§ 9.51, 39.03(a) (Vernon 2003) (providing, respectively, (1) that a peace officer is justified in using force when he reasonably believes force is necessary to make an arrest or prevent escape after arrest if he believes arrest is lawful and he reasonably believes his purpose and identity are already known by person to be arrested; and (2) elements of offense of official oppression to include intentionally mistreating or arresting a person when officer knows his conduct is unlawful); *id.* § 39.04 (Vernon Supp. 2008) (providing violation of civil rights when police officer intentionally denies or impedes a person in custody in the exercise or enjoyment of any right,

13

privilege, or immunity knowing his conduct is unlawful); *see also Hall*, 158 S.W.3d at 475. But viewing all of the evidence in the light most favorable to the prosecution, we hold that a rational trier of fact could have found that Officer Tyler was lawfully discharging his official duties — and was not criminally or tortiously abusing his office with official oppression or unjustified force — when he removed Taylor from the squad car and straddled him to get him to stay still. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Accordingly, we hold that the evidence is legally sufficient to support Taylor's conviction.

## C. Factual Sufficiency of the Evidence

*1. Standard of Review*

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Neal v. State*, 256 S.W.3d 264, 275 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 1037 (2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's determination is manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 704

14

(Tex. Crim. App. 2008); *Watson*, 204 S.W.3d at 414–15, 417. To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id*. We may not simply substitute our judgment for the factfinder's. *Johnson v. State*, 23 S.W.3d 1, 12 (Tex. Crim. App. 2000); *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the

weight and credibility of the evidence." *Id*. at 9.  Our deference in this regard safeguards the defendant's right to a trial by jury. *Lancon,* 253 S.W.3d at 704. An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

*2.  Factually Sufficient Evidence of Performance of Official Duty*

Officers Tyler and Vasquez were the only witnesses at trial.  On cross-examination of Officer Tyler, the following exchange took place:

Q.  And you say he started banging his head on the glass?

A.  Yes, he did.

Q.  So then he got out of the car?

A.  I took him out of the car, yes.

Q.  You took him out of the car.  So you've got a fella that doesn't want to go downtown.  You're going to take him out of the car. Was that a real gentle operation?

A.  I grabbed him by his shoulders and pulled him out.

Q.  Uh-huh.  And do what with him?

A.  Put him on the ground.

Q.  You put him on the ground.  You get him out of the car and you put him on the ground, right?

A.  Yeah.

16

Q. That will diffuse the situation, won't it?

A. At that point he was the one that escalated by banging his head. I had to take him out for his safety.

Q. So you have gone from not even warning him about getting a traffic ticket – about getting a disorderly conduct to now you've taken him out of the car and put him on the ground, so you've taken an upset man – an upset man right?

A. Yep.

Q. You've taken an upset man and have escalated the procedures and escalated the process to the point now he's on the ground and he's really upset, isn't he?

A. He was upset that I did that.

But this is not evidence that Officer Tyler was criminally or tortiously abusing his title as a public servant with official oppression or unjustified force. *See Hall*, 158 S.W.3d at 474–75. Rather, he was attempting to subdue a hostile individual who was trying to inflict injuries upon himself and who put up a struggle. Viewing all the evidence in a neutral light, favoring neither party, we hold that evidence that Officer Tyler was discharging his official duties is not so weak that the jury's verdict was clearly wrong and manifestly unjust and that there was no conflicting evidence to outweigh the evidence supporting Taylor's conviction. *See Neal,* 256 S.W.3d at 275; *Lancon*, 253 S.W.3d at 704; *Watson*, 204 S.W.3d at 414–15, 417. Accordingly, we hold that the evidence is factually sufficient to support Taylor's conviction.

17

Because we conclude that the evidence is legally and factually sufficient to support the conviction, we overrule Taylor's second point. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Neal*, 256 S.W.3d at 275; *Clayton*, 235 S.W.3d at 778; *Watson*, 204 S.W.3d at 414.

## V. CONCLUSION

Having overruled both of Taylor's points, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: CAYCE, C.J.; DAUPHINOT and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 19, 2009