COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-428-CR

 

 

BILLY WAYNE TAYLOR                                                        APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 297TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

                                          I.  INTRODUCTION








Appellant Billy Wayne Taylor appeals his
conviction for harassment of a public servant. 
In two points, Taylor argues that the trial court erred by not declaring
a mistrial when the prosecutor purportedly commented on his failure to testify
during trial and that the evidence is legally and factually insufficient to
sustain his conviction because there was no evidence that the officer was
exercising an official duty.  We will
affirm.

                          II.  FACTUAL AND PROCEDURAL BACKGROUND

Officer Michael Tyler, dressed in his full police
uniform, entered a Texaco station after filling up his squad car with gas.  He got in the check-out line behind
Taylor.  Taylor told his girlfriend, who
was in line with him, Amother------- bitch, get away
from me.@  Hearing this exchange, Officer Tyler tapped
Taylor on the shoulder and asked him to keep it down and to watch his
language.  Taylor responded, AI don=t want
to calm down, I just want that mother------- bitch away from me.@  Officer Tyler then asked Taylor to step
outside; Taylor refused and said that he would not speak to the officer.  After Taylor sat down at a video poker game
in the store, Officer Tyler approached him and asked again if Taylor would step
outside.  Taylor obliged.








Once outside, Taylor asked the officer Awhat
[his] problem was@ and claimed that the officer
had pulled him aside because he was black. 
Taylor refused to provide identification because he said he had done
nothing wrong.  He was visibly upset and
angry, and he paced back and forth, raising his arms up and down.  Officer Tyler took Taylor=s
actions as a threat and asked him to turn around and put his hands behind his
back.  The officer told Taylor that he
was going to take him downtown to fingerprint him because he had refused to
identify himself.  Officer Tyler
testified at trial that because Taylor had refused to identify himself, he had
the right to detain him.  When Officer
Tyler reached for Taylor=s wrist, Taylor pulled away and
shoved the officer in his chest with both hands.  Officer Tyler testified that he then decided
to arrest Taylor for assaulting a peace officer and that, after a struggle, he
was able to detain Taylor, cuff him, and put him in his squad car.

Inside the squad car, Taylor told Officer Tyler
that if he was going to go to jail, he was going to go to the hospital
first.  He began banging his head on the
plexiglass divider in the car.  Officer
Tyler pulled Taylor out of the car and laid him on the ground.  Officer Tyler struggled to keep Taylor down
on the ground and under control.  Taylor
then spit in Officer Tyler=s face;
the spit got in the officer=s mouth
and eyes.

Officer Jose Vasquez arrived on the scene just
before Taylor spit in Officer Tyler=s face;
he saw the pair wrestling on the ground and saw Taylor spit in Officer Tyler=s
face.  Officer Vasquez took Taylor to the
hospital and then to jail.  Taylor was
charged with harassment of a public servant. 
A jury found him guilty and, after he pleaded true to the enhancement
paragraph contained in the indictment, the trial court sentenced him to
twenty-five years= confinement.








                        III.  COMMENT ON TAYLOR=S FAILURE
TO TESTIFY

In his first point, Taylor argues that the trial
court erred by not declaring a mistrial because during the prosecutor=s
opening statement, she commented on Taylor=s
failure to testify.  Taylor claims that
the prosecutor=s comment violated his state and
federal constitutional rights against self-incrimination and article 38.08 of
the code of criminal procedure.  See
U.S. Const. amend V; Tex. Const. art. I, ' 10;
Tex. Code Crim. Proc. Ann. art. 38.08 (Vernon 2005).  The State argues that the prosecutor=s remark
was not a comment on Taylor=s
failure to testify and that, alternatively, any prejudice to Taylor was cured
by the trial court=s instruction to disregard the
remark.

Near the end of the State=s
opening statement, the prosecutor stated, ADespite
any motives that happened, which are not a part of the charges, despite any
excuses which the defendant may bring, he broke the law.@  Defense counsel objected that this remark was
an improper comment on an election to not testify, and the trial court
instructed the jury to disregard it.  The
trial court then held a hearing outside the presence of the jury and denied
defense counsel=s motion for a mistrial. 








                            A.  Standard of Review and Law on

                               Comments
on Failure to Testify

 

A comment on an accused=s
failure to testify violates the accused=s state
and federal constitutional privileges against self-incrimination.  Montoya v. State, 744 S.W.2d 15, 34
(Tex. Crim. App. 1987) (op. on reh=g), overruled
on other grounds by Cockrell v. State, 933 S.W.2d 73, 89 (Tex. Crim. App.
1996); Smith v. State, 65 S.W.3d 332, 339 (Tex. App.CWaco
2001, no pet.).  In addition, the Texas
Code of Criminal Procedure provides that a defendant=s
failure to testify on his own behalf may not be held against him and that
counsel may not allude to the defendant=s
failure to testify.  Tex. Code Crim.
Proc. Ann. art. 38.08.

When the trial court sustains an objection to
improper argument and instructs the jury to disregard but denies a defendant=s motion
for a mistrial, the issue is whether the trial court abused its discretion by
denying the mistrial.  Hawkins v.
State, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).  Only in extreme circumstances, when the
prejudice caused by the improper argument is incurable, i.e., Aso
prejudicial that expenditure of further time and expense would be wasteful and
futile,@ will a
mistrial be required.  Id.; see
Simpson v. State, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003), cert.
denied, 542 U.S. 905 (2004).








In determining whether the trial court abused its
discretion by denying the mistrial, we balance three factors:  (1) the severity of the misconduct (the
magnitude of the prejudicial effect of the prosecutor's remarks), (2) curative
measures, and (3) the certainty of conviction absent the misconduct.  Archie v. State, 221 S.W.3d 695, 700
(Tex. Crim. App. 2007); Hawkins, 135 S.W.3d at 77; Mosley v. State,
983 S.W.2d 249, 259 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999).  Except
in the most blatant cases, an instruction to disregard a comment on an accused=s
failure to testify will cure any prejudicial effect caused by the improper
comment.  Moore v. State, 999
S.W.2d 385, 405 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216
(2000); see Archie, 221 S.W.3d at 700.

We presume the jury complied with an instruction
to disregard improper jury argument.  See
Wesbrook v. State, 29 S.W.3d 103, 116 (Tex. Crim. App. 2000), cert.
denied, 532 U.S. 944 (2001).  In
assessing the curative effect of the court=s
instruction to disregard, the correct inquiry is whether the argument was
extreme, manifestly improper, injected new and harmful facts into the case, or
violated a mandatory statutory provision and was thus so inflammatory that an
instruction to disregard could not cure its prejudicial effect.  Faulkner v. State, 940 S.W.2d 308, 312
(Tex. App.CFort Worth 1997, pet. ref=d) (en
banc op. on reh=g).








              B.  No Abuse of Discretion by Denying Motion for
Mistrial

Even assuming the prosecutor=s remark
in question was a comment on Taylor=s
failure to testify, the remark is not of such great magnitude to cause Taylor
severe prejudice.  See Archie, 221
S.W.3d at 700; Hawkins, 135 S.W.3d at 77.  As the State points out on appeal, by making
the complained-of remarkCthat despite motives or excuses
the defendant may bring, he broke the lawCthe
prosecutor likely was intending to refer to the fact that Taylor would attempt
to show that he had acted out of frustration that was exacerbated by Officer
Tyler=s
actions.[2]  Consequently, the remark was not a direct
reference to Taylor=s failure to testify, and the
severity of the prosecutorial misconduct, if any, was minor.  See Archie, 221 S.W.3d at 700; Hawkins,
135 S.W.3d at 77.








Regarding the second factorCthe
curative measures takenCthe trial court cured any
prejudice from the prosecutor=s remark
by immediately instructing the jury to disregard it.  See Hawkins, 135 S.W.3d at 84; Simpson,
119 S.W.3d at 272.  We presume that the
jury complied with the instruction.  See
Wesbrook, 29 S.W.3d at 116; see also Michaelwicz v. State, 186
S.W.3d 601, 620 (Tex. App.CAustin
2006, pet. ref=d) (AThe jury
is presumed to follow the trial court=s
instruction to disregard unless the comment is so prejudicial or extreme that
the instruction was incapable of removing the harm.@).

And finally, even without the comment, the State
had a solid case against Taylor.  Only
two witnesses testified at trialCOfficers
Tyler and Vasquez.  Both testified that
Taylor spit on Officer Tyler, who was in full police uniform.  See Tex. Penal Code Ann. ' 22.11(a)(2)
(Vernon Supp. 2008) (setting forth offense of harassment of public
servant).  And as detailed below, the
evidence at trial demonstrated that Officer Tyler was lawfully discharging an
official duty at the time of the incident. 
See id.  Accordingly, there
was evidence demonstrating likelihood of conviction.  See Hawkins, 135 S.W.3d at 77.

Thus, weighing the appropriate factors, we hold
that the trial court=s instruction to disregard was
effective and cured the prejudicial effect, if any, stemming from the
prosecutor=s comment made during opening
argument.  See Simpson, 119 S.W.3d
at 272.  Accordingly, we hold that the
trial court did not abuse its discretion by denying Taylor=s
motions for mistrial.  See Hawkins,
135 S.W.3d at 77.  We overrule Taylor=s first
point.

                            IV.  LEGAL AND FACTUALLY SUFFICIENCY








In his second point, Taylor contends that the
evidence is both legally and factually insufficient to show that Officer Tyler
was performing an official duty as required by Texas Penal Code section
22.11(a)(2).  See Tex. Penal Code
Ann. ' 22.11(a)(2).


                             A.  Harassment of a Public Servant

Section 22.11(a)(2) of the penal code provides
that a person commits an offense if, with the intent to assault, harass, or
alarm, he

causes another person the
actor knows to be a public servant to contact the blood, seminal fluid, vaginal
fluid, saliva, urine, or feces of the actor . . . while the public servant is
lawfully discharging an official duty or in retaliation or on account of an
exercise of the public servant=s official power or performance of an official
duty.

 

Id.  AOfficial
duty@ is not
defined in the penal code.  But we find
insight into this phrase in the context of the offense of aggravated assault
against a public servant; that offense occurs when a person commits aggravated
assault against a person whom the actor knows to be a public servant while the
public servant is lawfully discharging an official duty.  See Tex. Penal Code Ann. '
22.02(b).








In the context of the offense of aggravated
assault of a public servant, the Alawful
discharge@ of official duties means that
the public servant is not criminally or tortiously abusing his or her office as
a public servant by acts of, for example, official oppression or violations of
the civil rights of a person in custody, or the use of unlawful, unjustified
force.  Hall v. State, 158 S.W.3d
470, 474B75 (Tex.
Crim. App. 2005); Bell v. State, 233 S.W.3d 583, 586 (Tex. App.CWaco
2007, pet. dism=d); see Hughes v. State,
897 S.W.2d 285, 298 (Tex. Crim. App. 1994), cert. denied, 514 U.S. 1112
(1995) (holding that whether officer=s
traffic stop was constitutionally reasonable is not relevant to determining if
officer was acting in the lawful discharge of his duties); Montoya, 744
S.W.2d at 29 (holding that a lawful arrest was not required to demonstrate that
officer was acting within lawful discharge of official duties).  As long as a peace officer acts within his
capacity as a peace officer, he acts within the lawful discharge of his
official duties.  Hall, 158 S.W.3d
at 474.  Courts look at the details of
the encounter, such as whether the police officer was in uniform, on duty, and
on regular patrol at the time of the assault. 
Id.

                           B.  Legal Sufficiency of the Evidence[3]

                                     1.  Standard of Review

In reviewing the legal sufficiency of the
evidence to support a conviction, we view all of the evidence in the light most
favorable to the prosecution in order to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235
S.W.3d 772, 778 (Tex. Crim. App. 2007).








This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.  The trier of fact is the sole judge of the
weight and credibility of the evidence.  See
Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270
S.W.3d 564, 568 (Tex. Crim. App. 2008). 
Thus, when performing a legal sufficiency review, we may not re-evaluate
the weight and credibility of the evidence and substitute our judgment for that
of the factfinder.  Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution.  Jackson,
443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at 778.








The sufficiency of the evidence should be
measured by the elements of the offense as defined by the hypothetically correct
jury charge for the case.  Grotti v.
State, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008); Malik v. State,
953 S.W.2d 234, 240 (Tex. Crim. App. 1997). 
Such a charge would be one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily restrict the State=s
theories of liability, and adequately describes the particular offense for
which the defendant was tried.  Gollihar
v. State, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); Malik, 953 S.W.2d
at 240.  However, we may not affirm a
conviction based on legal or factual grounds that were not submitted to the
jury.  Malik, 953 S.W.2d at 238
n.3.  The law as authorized by the
indictment means the statutory elements of the charged offense as modified by
the charging instrument.  See Curry v.
State, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000).

           2.  Legally Sufficient Evidence of Performance of
Official Duty

Here, Taylor does not challenge the sufficiency
of the evidence to prove that he harassed Officer Tyler within the meaning of
penal code section 22.11(a)(2).  See Tex.
Penal Code Ann. ' 22.11(a)(2).  Rather, Taylor contends that Officer Tyler
was not lawfully discharging an official duty as required under that section
because he Awas abusive and using
unjustifiable and unlawful force@ when he
put Taylor on the ground in handcuffs and pinned him down.  Taylor concedes that the arrest was an
official duty, but he argues that the abusive conduct of the officer was not.








The uncontradicted testimony showed that Taylor
was distraught, visibly upset, and angry throughout his encounter with Officer
Tyler.  Officer Tyler testified that when
Taylor began banging his head against the plexiglass divider, he pulled him out
of the car A[f]or his safety, so he wouldn=t
endanger himself.@ 
Officer Tyler testified that he wrestled on the ground with Taylor and
tried to tell him Ato calm down, stay still.@  Officer Vasquez testified that he saw Officer
Tyler Ain a
struggle trying to hold down [Taylor] and keep him under control.@








As long as Officer Tyler was not criminally or
tortiously abusing his title as a public servant, he was performing the Alawful
discharge@ of his official duties.  See Hall, 158 S.W.3d at 474B75.  On appeal, Taylor argues that Officer Tyler=s
conduct was oppressive, abusive, and unjustified, pointing to penal code
sections 9.51, 39.03, and 39.04 as support for his argument.  See Tex. Penal Code Ann. '' 9.51,
39.03(a) (Vernon 2003) (providing, respectively, (1) that a peace officer is
justified in using force when he reasonably believes force is necessary to make
an arrest or prevent escape after arrest if he believes arrest is lawful and he
reasonably believes his purpose and identity are already known by person to be
arrested; and (2) elements of offense of official oppression to include
intentionally mistreating or arresting a person when officer knows his conduct
is unlawful); id. ' 39.04 (Vernon Supp. 2008)
(providing violation of civil rights when police officer intentionally denies
or impedes a person in custody in the exercise or enjoyment of any right,
privilege, or immunity knowing his conduct is unlawful); see also Hall,
158 S.W.3d at 475.  But viewing all of
the evidence in the light most favorable to the prosecution, we hold that a
rational trier of fact could have found that Officer Tyler was lawfully
discharging his official dutiesCand was
not criminally or tortiously abusing his office with official oppression or
unjustified forceCwhen he removed Taylor from the
squad car and straddled him to get him to stay still.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778. 
Accordingly, we hold that the evidence is legally sufficient to support
Taylor=s
conviction.

C.  Factual Sufficiency of the
Evidence

1.  Standard of Review








When reviewing the factual sufficiency of the
evidence to support a conviction, we view all the evidence in a neutral light,
favoring neither party.  Neal v. State,
256 S.W.3d 264, 275 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct.
1037 (2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App.
2006).  We then ask whether the evidence
supporting the conviction, although legally sufficient, is nevertheless so weak
that the factfinder=s determination is clearly wrong
and manifestly unjust or whether conflicting evidence so greatly outweighs the
evidence supporting the conviction that the factfinder=s
determination is manifestly unjust.  Lancon
v. State, 253 S.W.3d 699, 704 (Tex. Crim. App. 2008); Watson, 204
S.W.3d at 414B15, 417.  To reverse under the second ground, we must
determine, with some objective basis in the record, that the great weight and
preponderance of all the evidence, though legally sufficient, contradicts the
verdict.  Watson, 204 S.W.3d at
417.








In determining whether the evidence is factually
insufficient to support a conviction that is nevertheless supported by legally
sufficient evidence, it is not enough that this court Aharbor a
subjective level of reasonable doubt to overturn [the] conviction.@  Id. 
We cannot conclude that a conviction is clearly wrong or manifestly
unjust simply because we would have decided differently than the jury or
because we disagree with the jury=s
resolution of a conflict in the evidence. 
Id.  We may not simply
substitute our judgment for the factfinder=s.  Johnson v. State, 23 S.W.3d 1, 12
(Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim.
App. 1997).  Unless the record clearly
reveals that a different result is appropriate, we must defer to the jury=s
determination of the weight to be given contradictory testimonial evidence
because resolution of the conflict Aoften
turns on an evaluation of credibility and demeanor, and those jurors were in
attendance when the testimony was delivered.@  Johnson, 23 S.W.3d at 8.  Thus, unless we conclude that it is necessary
to correct manifest injustice, we must give due deference to the factfinder=s
determinations, Aparticularly those
determinations concerning the weight and credibility of the evidence.@  Id. at 9.  Our deference in this regard safeguards the
defendant=s right to a trial by jury.  Lancon, 253 S.W.3d at 704.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint on appeal.  Sims v. State, 99 S.W.3d 600, 603
(Tex. Crim. App. 2003).

          2.  Factually Sufficient Evidence of Performance
of Official Duty

Officers Tyler and Vasquez were the only
witnesses at trial.  On cross-examination
of Officer Tyler, the following exchange took place:

Q.  And you say he started banging his head on
the glass?

 

A.  Yes, he did.

 

Q.  So then he got out of the car?

 

A.  I took him out of the car, yes.

 

Q.  You took him out of the car.  So you=ve got a fella that doesn=t want to go
downtown.  You=re going to take him out
of the car.  Was that a real gentle
operation?

 

A.  I grabbed him by his shoulders and pulled him
out.

 

Q.  Uh-huh. 
And do what with him?

 

A.  Put him on the ground.

 

Q.  You put him on the ground.  You get him out of the car and you put him on
the ground, right?

 

A.  Yeah.

 








Q.  That will diffuse the situation, won=t it?

 

A.  At that point he was the one that escalated
by banging his head.  I had to take him
out for his safety.

 

Q.  So you have gone from not even warning him
about getting a traffic ticket B about getting a disorderly conduct to now you=ve taken him out of the
car and put him on the ground, so you=ve taken an upset man B an upset man right?

 

A.  Yep.

 

Q.  You=ve taken an upset man and have escalated the
procedures and escalated the process to the point now he=s on the ground and he=s really upset, isn=t he?

 

A.  He was upset that I did that.

 

But this is not evidence that Officer Tyler was criminally or
tortiously abusing his title as a public servant with official oppression or
unjustified force.  See Hall, 158
S.W.3d at 474B75.  Rather, he was attempting to subdue a hostile
individual who was trying to inflict injuries upon himself and who put up a
struggle.  Viewing all the evidence in a
neutral light, favoring neither party, we hold that evidence that Officer Tyler
was discharging his official duties is not so weak that the jury=s
verdict was clearly wrong and manifestly unjust and that there was no
conflicting evidence to outweigh the evidence supporting Taylor=s
conviction.  See Neal, 256
S.W.3d at 275; Lancon, 253 S.W.3d at 704; Watson, 204 S.W.3d at
414B15,
417.  Accordingly, we hold that the
evidence is factually sufficient to support Taylor=s
conviction.








Because we conclude that the evidence is legally
and factually sufficient to support the conviction, we overrule Taylor=s second
point.  See Jackson, 443 U.S. at
319, 99 S. Ct. at 2789; Neal, 256 S.W.3d at 275; Clayton, 235
S.W.3d at 778; Watson, 204 S.W.3d at 414.

                                          V.  CONCLUSION

Having overruled both of Taylor=s
points, we affirm the trial court=s
judgment.

 

SUE
WALKER

JUSTICE

 

PANEL: CAYCE, C.J.;
DAUPHINOT and WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED: March 19, 2009











[1]See Tex. R. App. P. 47.4.





[2]In fact, during
cross-examination of Officer Tyler, this is exactly what the defense attorney
attempted to do, stating, AYou=ve taken an upset man and have escalated the
procedures and escalated the process to the point now he=s on the ground and he=s really upset, isn=t he?@





[3]Although Taylor combines
his legal and factual sufficiency arguments in a single point, we will address
them separately.  See Laster v. State,
275 S.W.3d 512, 519 (Tex. Crim. App. 2009) (holding that appellate courts may
not combine legal and factual sufficiency analyses).