**Michael Wayne BELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–06–00168–CR.**

Court of Appeals of Texas, Waco.

Sept. 12, 2007.

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Louis A. Gimbert, Rodriguez & Gimbert, Bryan, TX, for Appellant.

Bill R. Turner, Brazos County District Attorney, Bryan, TX, for Appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Appellant Michael Wayne Bell appeals his conviction for aggravated assault of a public servant. The jury assessed a twenty-five year prison sentence. We will affirm.

### Background

After being detained by Jillian Garza, a Bryan police officer, Bell resisted being handcuffed, scuffled with Garza and other officers, and was able to get one of the officers' handguns. He pointed the gun at Officer Garza, telling her to back off or he would shoot her. For the safety of residents who were coming outside, the officers let Bell run away. He was apprehended about five months later.

### Sufficiency of the Evidence on Lawfully Discharging an Official Duty

Bell's first two issues assert that the evidence is legally and factually insufficient to support the jury's guilty finding.[1] Aggravated assault is elevated to a first-degree felony when committed against a person the actor knows to be a public servant while the public servant is lawfully discharging an official duty. *See* TEX. PEN. CODE ANN. § 22.02(b)(2)(B) (Vernon Supp. 2006). Bell's argument is that Garza's initial detention of him was illegal (*i.e.*, unconstitutional) and that the evidence is therefore legally and factually insufficient to support the lawfully-discharging-an-official-duty element.

▆▆▆ In the context of the offense of aggravated assault of a public servant, the "lawful discharge" of official duties means that the public servant is not criminally or tortiously abusing his or her office as a public servant by acts of, for example, official oppression or violations of the civil rights of a person in custody, or the use of unlawful, unjustified force. *Hall v. State*, 158 S.W.3d 470, 474–75 (Tex.Crim.App. 2005); *see Hughes v. State*, 897 S.W.2d 285, 298 (Tex.Crim.App.1994) (holding that whether officer's traffic stop was constitutionally reasonable is not relevant to determining if officer was acting in the lawful discharge of his duties); *Montoya v. State*, 744 S.W.2d 15, 29 (Tex.Crim.App.1987) (holding that a lawful arrest was not required to demonstrate that officer was acting within lawful discharge of official duties), *overruled on other grounds by Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim.App.1996). As long as a peace officer was acting within her capacity as a peace officer, she was acting within the lawful discharge of her official duties. *Hall*, 158 S.W.3d at 474. Courts look at the details of the encounter, such as whether the police officer was in uniform, on duty, and whether she was on regular patrol at the time of the assault. *Id.*

▆▆▆ In this case, around 1:00 a.m., Garza responded to an anonymous tip that

---

1. When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim. App.1992). In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414–15 (Tex.Crim.App.2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim. App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment...." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L.Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416–17.

a black male wearing a navy blue shirt and black pants was selling drugs at an intersection in a well known drug area. About four to five blocks from the intersection, Garza encountered Bell and another man as they were walking down the street. Garza said that Bell matched the description of the person in the tip. When she told them that she needed to do a check for weapons, on their own they both put their hands on the hood of her patrol car. She also called for back-up. Two officers arrived within a minute. When it became obvious that Bell was giving incorrect information about his identity, one of the officers told Bell that they were going to detain him until they ascertained his real name. When the officer tried to handcuff Bell, the scuffle broke out and he got one of the officers' guns.

There was testimony that all three officers were wearing their Bryan police department uniforms that clearly displayed their badges and that they were in clearly marked Bryan police department patrol cars. Garza said that she had stopped and then detained Bell because she was conducting a narcotics investigation.

Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt that Garza was lawfully discharging an official duty. *See Jackson,* 443 U.S. at 318–319, 99 S.Ct. at 2788–89. Issue one (legal insufficiency) is overruled. And considering all of the evidence in a neutral light, we find that the jury was justified in finding Bell guilty. *See Watson,* 204 S.W.3d at 415. Issue two (factual insufficiency) is overruled.

### Fruit of the Poisonous Tree

■ In his third issue, Bell asserts that the trial court erred in denying his motion to suppress. Bell asserts that Garza's initial stop and search was a mere encounter,

rather than a *Terry* stop, because Garza did not have reasonable suspicion to temporarily detain him based on the anonymous tip. *See Florida v. J.L.,* 529 U.S. 266, 270, 120 S.Ct. 1375, 1378, 146 L.Ed.2d 254 (2000) (holding that anonymous tip alone will rarely establish level of suspicion required to justify detention and that there must be some further indicia of reliability or some additional facts from which officer may reasonably conclude that tip is reliable and detention is justified). Thus, he claims that the evidence of all the events that occurred after the illegal detention should have been suppressed as "fruits of the poisonous tree." *See Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963) (holding that evidence derived from an illegal act cannot be used at trial); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (Vernon 2005) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case."). We assume without deciding that Garza's initial detention of Bell was unconstitutional.

■ Under the "fruit of the poisonous tree" doctrine, all evidence derived from the exploitation of an illegal detention, search, or seizure must be suppressed, unless the State shows that there was a break in the chain of events sufficient to refute the inference that the evidence was a product of the Fourth Amendment violation. *Wolf v. State,* 137 S.W.3d 797, 805 (Tex.App.-Waco 2004, no pet.) (citing *United States v. Portillo–Aguirre,* 311 F.3d 647, 650 (5th Cir.2002)). Evidence can become so attenuated from the illegal detention to dissipate the taint of the prior illegality. *See St. George v. State,* 197

S.W.3d 806, 824 (Tex.App.-Fort Worth 2006, pet. granted) (en banc) ("both the federal and state exclusionary rules allow the admission of otherwise tainted evidence if the connection between the initial illegality and the discovery of the challenged evidence has become so attenuated as to dissipate the taint of the prior illegality") (citing *Wong Sun,* 371 U.S. at 487, 83 S.Ct. at 417; and *Johnson v. State,* 871 S.W.2d 744, 750 (Tex.Crim.App.1994)).

Typically, evidence such as seized illegal narcotics is what is sought to be excluded by a suppression motion. *See, e.g., St. George,* 197 S.W.3d at 824–25. But Bell is asserting that all the evidence relating to his commission of the subsequent offense of aggravated assault of a public servant during his illegal detention is fruit of the poisonous tree. He cites no authority for that proposition, nor do we find any supporting his theory.

In *State v. Mayorga,* 901 S.W.2d 943 (Tex.Crim.App.1995) (plurality op.), the accused resisted what turned out to be a wrongful arrest, yet she was charged with resisting arrest. She moved to suppress all of the evidence, including testimony of the officers, of the wrongful arrest, and the trial court granted her motion. *Id.* at 944–45. Reversing the trial court, the plurality recognized that article 38.23 deals with exclusion of illegally obtained evidence of a prior crime; it does not provide any protection to commit a new crime and then to exclude any evidence of that new crime because the police initially acted illegally. *Id.* at 945–46; *see Donoho v. State,* 39 S.W.3d 324, 327 (Tex.App.-Fort Worth 2001, pet. ref'd) (holding that because appellant committed the aggravated assault after his warrantless arrest, evidence of the assault was not obtained in "violation of the law"); *Cooper v. State,* 956 S.W.2d

95, 97–98 (Tex.App.-Tyler 1997, pet. ref'd) (holding that alleged illegality of defendant's arrest could not serve, under article 38.23, as a means to exclude evidence of his subsequent aggravated assault on the arresting officers; "[t]he evidence of the aggravated assault was not 'obtained in violation of the law' ").

The plurality opinion's analysis in *Mayorga* was adopted in *Martinez v. State,* 91 S.W.3d 331, 340 & n. 35 (Tex.Crim.App. 2002). There the question and answer were: "Is a person who allegedly commits perjury in making a statement to the grand jury entitled to suppress that sworn statement because he was not fully advised of his rights to remain silent and make no statement at all? No. A person does not have a license to lie because the constable failed to inform him of his right to remain silent." *Id.* at 337. In its discussion, the Court of Criminal Appeals noted:

> Appellee's argument, carried to its extreme logical conclusion, would provide legal protection to the murderer of a police officer, who proves that the officer detained him without articulable suspicion prior to the murder. Under appellee's theory, evidence of that killing would have to be suppressed under article 38.23 because the murder occurred after and because of the officer's initial "illegal" conduct. That theory is not the law.

*Id.* at 340. The trial court did not err in denying Bell's motion to suppress, and we overrule his third issue.

### Jury Selection

 Bell's fourth issue asserts that the trial court erred in denying a challenge for cause of a prospective juror who allegedly expressed a bias against Bell.[2] A chal-

---

2. Whether Bell preserved his complaint for appeal is not in dispute; he did, and the State

agrees. To preserve such a complaint on a denied challenge for cause, "an appellant

lenge for cause is "an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." Tex.Code Crim. Proc. Ann. art. 35.16(a) (Vernon 2006).[3] A challenge for cause may be made on the ground that a prospective juror is biased or prejudiced for or against the defendant. *Id.* art. 35.16(a)(9). "Bias" means an inclination toward one side of an issue rather than to the other leading to the natural inference that the juror will not act with impartiality. *Anderson v. State*, 633 S.W.2d 851, 853 (Tex.Crim.App. [Panel Op.] 1982). "Prejudice" means prejudging. *Id.*

■ During jury selection, prospective juror Sielken advised that her uncle was a police officer. The following colloquy occurred between her and Bell's attorney:

[ATTORNEY]: Uh-huh. But anything about that experience says, "Okay. Maybe I'm not the one to sit on this jury"?

JUROR SIELKIN: Maybe not. I don't know. I would hope I wasn't; but, you know, he was a—it would be different if it was my uncle, if he was the person that—

[ATTORNEY]: And unfortunately the question I've got to ask is we've got to know that about you now because if you make that decision after you're already put into the jury box, somebody is

not going to be getting a fair trial and . . .

JUROR SIELKIN: Then I'm the one that would be—you know, prevent him from having a fair trial.

[ATTORNEY]: So you wouldn't think that you could . . .

JUROR SIELKIN: I don't know. Just . . .

Later, Sielken was further questioned in individual voir dire:

[ATTORNEY]: . . . Do you think you would have some reservations in giving Mr. Bell a fair trial because of the type of charge?

[JUROR SIELKIN]: Yeah. I would hate to—I would hate to think that I would; but, you know, I do have to—it's kind of a fine tune. I mean, I always knew my uncle was—life on the line.

[ATTORNEY]: Uh-huh. Would you rather serve on a different type of case than this?

[JUROR SIELKIN]: Yes.

[ATTORNEY]: And you feel like your relationship with your uncle could come into play if you were selected as a juror?

[JUROR SIELKIN]: Yes.

The prosecutor then examined Sielken:

[PROSECUTOR]: And it'll be your job to judge the credibility of each. And so you're saying that as of right now you're going to start the police officers

---

must demonstrate on the record that: 1) he asserted a clear and specific challenge for cause; 2) he used a peremptory challenge on the complained-of venireperson; 3) all his peremptory challenges were exhausted; 4) his request for additional strikes was denied; and 5) an objectionable juror sat on the jury." *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim.App.2002). When the trial court errs in overruling a challenge for cause against a venireperson, the defendant is harmed if he uses a peremptory strike to remove the veni-

reperson and thereafter suffers a detriment from the loss of the strike. *Id.*

3. Bell asserts that the trial court's ruling violated article 35.16, as well as the due process and due course of law provisions of the U.S. and Texas constitutions. Because Bell did not assert his constitutional claims in the trial court (nor has he briefed them), they have not been preserved for appeal. Tex.R.App. P. 33.1(a)(1)(A).

with higher credibility than that of our civilian witnesses?

[JUROR SIELKIN]: I don't know if I can—if I'd say that.

[PROSECUTOR]: Okay. So you're saying, then—or are you saying, then, that you can listen to both the police officers testify and the civilians testify, shore up their testimony and their credibility, and then make a determination after hearing all the facts?

[JUROR SIELKIN]: Yeah, I think I can do that.

Finally, the trial court queried Sielkin:

THE COURT: You would not hold the State to their burden of proof of beyond a reasonable doubt?

[JUROR SIELKIN]: No. I mean, I—okay. You're trying to say that I would just automatically assume that the State was correct? Is that what you're saying?

THE COURT: Maybe not automatically assume, but give them—give them a head start.

[JUROR SIELKIN]: No, I don't think necessarily along that line. I think maybe my concern is—and—you know, it says it's an assault on a police officer. You know, then that puts you—okay.

THE COURT: I don't think that there's anybody in the room that says that that's a good thing.

[JUROR SIELKIN]: Right. I understand. Right.

THE COURT: Why don't you tell me in your own words what your concerns are about sitting as a juror in this case?

[JUROR SIELKIN]: I guess my major concern would be I may be a little prejudiced against him. I would hope I would not be; but, you know, I don't know the facts.

THE COURT: But as you sit here right now, are you?

[JUROR SIELKIN]: Well, no, not at that point. Not under just what information we have been told.

The trial court overruled Bell's challenge for cause of Sielkin.

■■■■ If bias or prejudice is not established as a matter of law, the trial court has discretion to determine whether bias or prejudice actually exists to such degree that a prospective juror is disqualified and that the challenge for cause should be sustained. *Little v. State*, 758 S.W.2d 551, 556 (Tex.Crim.App.1988). But if the prospective juror is shown to be biased as a matter of law, she must be excused when challenged, even if she states that she can set aside her bias and provide a fair trial. *Tran v. State*, 221 S.W.3d 79, 83–84 (Tex. App.-Houston [14th Dist.] 2005, pet. ref'd) (citing *Anderson*, 633 S.W.2d at 854). However, the trial court, in its discretion, initially determines whether such a bias exists, and the trial court's decision will be reviewed in light of all of the answers given. *Id.* (citing *Anderson*, 633 S.W.2d at 854). We review the voir dire record in its entirety and ask whether the trial court had a rational basis for its conclusions. *Granados v. State*, 85 S.W.3d 217, 229 (Tex.Crim.App.2002).

■■■■ "We afford the trial court considerable deference, because it is in the best position to evaluate a prospective juror's demeanor and responses." *Russeau v. State*, 171 S.W.3d 871, 879 (Tex.Crim.App. 2005). We will thus reverse a trial court's ruling on a challenge for cause only for a clear abuse of discretion. *Id.* This is especially true when the trial court is faced with a vacillating or equivocating prospective juror. *Banda v. State*, 890 S.W.2d 42, 54 (Tex.Crim.App.1994); *see Russeau*, 171 S.W.3d at 879; *King v. State*, 29 S.W.3d 556, 568 (Tex.Crim.App.2000) (Particular

deference is given when the potential juror's answers are vacillating, unclear or contradictory.). "The trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record." *Banda,* 890 S.W.2d at 54.

Reviewing all of Sielkin's voir dire answers, we find that the trial court did not abuse its discretion. She said she would not start off police officer witnesses with a higher level of credibility than she would a lay witness, and she said she would listen to all the evidence before making up her mind on credibility. *See Feldman,* 71 S.W.3d at 745 (finding that trial court's denial of challenge for cause of juror who initially indicated he would lean towards believing an officer over a layperson, but later said he would have to see both witnesses testify, was not abuse of discretion). She affirmed that she would not relieve the State of its burden of proof, and based on what she knew at that time about the case, she was not prejudiced against the defendant.

Sielkin was a vacillating, equivocating, and contradictory prospective juror, but she was not biased as a matter of law. Being in the best position to evaluate her answers and Bell's allegation of bias, the trial court did not abuse its discretion based on the entire record. We overrule Bell's fourth issue.

### Conclusion

Having overruled all of Bell's issues, we affirm the trial court's judgment.