COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| EDUARDO GUTIERREZ, | § | No. 08-11-00258-CR |
| Appellant, | § | Appeal from the |
| v. | § | County Criminal Court at Law No. 2 |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20100C05621) |
| | § | |

## **O P I N I O N**

Eduardo Gutierrez appeals his jury conviction of one count of driving while intoxicated. In two issues, Appellant maintains that the trial court improperly forced him to use a peremptory strike against a juror who should have been struck for cause, and that police officer testimony pertaining to the administration of field sobriety tests was inadmissible expert testimony. We affirm.

## BACKGROUND
### *Factual History*

At approximately 9:30 p.m. on May 29, 2010, El Paso Police Department Officer Louis Evans observed Appellant's pick-up truck weave within one lane of traffic as it traveled down Pebble Hills Boulevard in East El Paso. After following the truck in his patrol unit, Officer Evans witnessed the truck's right side wheels cross briefly into the adjacent lane of traffic before

the truck returned completely into its original lane. Appellant did not signal this partial lane change, traffic on that street was heavy at the time, and there was another vehicle in the lane next to Appellant's truck when Appellant veered into the right lane. Based on this observation, Officer Evans attempted to initiate a traffic stop. Appellant continued on for a distance before pulling in to an apartment complex.

Officer Evans testified that Appellant had bloodshot eyes and smelled like alcohol, and that he could see a Bud Light beer bottle in the back pocket of the driver's seat. Officer Evans called EPPD Officer Michelle Gonzalez to perform three standard field-sobriety tests—the horizontal gaze nystagmus test, the one-leg stand test, and the walk-and-turn test—in Spanish, since Appellant stated he could not speak English. While waiting for Officer Gonzalez's arrival, Officer Evans heard the sound of liquid being poured onto the asphalt outside the truck. Officer Evans testified that the bottle in the driver's side pocket disappeared and the liquid being poured smelled liked beer.

Officer Gonzalez testified that before she administered the field sobriety tests, she also saw that Appellant had bloodshot eyes, smelled like alcohol, and was swaying back and forth as he stood still. Appellant failed the nystagmus test, and Officer Gonzalez testified that Appellant failed the walk-and-turn test as well, although she was unable to remember specifically what he did wrong. Appellant also failed the one-leg stand. On cross-examination, Officer Gonzalez testified that Appellant had informed her that he had hurt his leg, but that he never informed her that he was physically unable to perform the tests. She further stated that leg injuries could affect standard field sobriety test results, since balance is a critical factor in many of the tests. She also acknowledged wind could cause someone to get off balance and affect field sobriety test results.

After failing the field sobriety test and being advised of his rights, Appellant voluntarily gave two breath samples to EPPD Officer Anthony Alegre, a certified Intoxilyzer operator. The breath test showed that Appellant had a presumptive blood alcohol concentration of .23, almost triple the legal limit of .08. Officer Alegre testified that he waited fifteen minutes before administering the breath test to ensure that Appellant did not burp, vomit, or attempt to place a foreign object in his own mouth, all of which could affect the test. EPPD Certified Technical Supervisor Rafael Tamez confirmed at trial that the Intoxilyzer testing machine was working correctly. He also explained that if a subject burps at any point during the test, the alcohol levels in the breath could increase, but that a strong differential in the alcohol levels between two samples would cause the machine to reject the samples and produce an invalid test report. The machine in question here did not produce such a report.

The defense presented two witnesses at trial. First, Dr. Jorge Lopez, a Mexican physician and close personal friend of Appellant, testified that Appellant had broken his leg ten years ago, although Dr. Lopez did not treat the injury. Dr. Lopez further testified that he was playing golf with Appellant prior to his arrest at the Vista Hills Country Club in East El Paso. He testified that Appellant and him had some beers while playing 18 holes of golf and that afterwards they stopped to eat, and Appellant may have had two more beers, but did not appear intoxicated.

Appellant, testifying in his own defense, stated that he consumed four beers and four bottles of water during the course of the golf game. Afterwards, he ate two burritos, which he testified gave him gastritis and made him burp. He also consumed two beers at dinner before driving home. He admitted to pouring out the beer in his car because he was "very nervous." Appellant informed officers of his leg injury and gout in his knee, but did not inform them about his gastritis. Appellant did not believe he was intoxicated.

3

*Procedural History*

During jury selection, the prosecutor asked members of the venire if anyone felt as though they would have any difficulties passing judgment in this case:

[PROSECUTION]: Okay. Ladies and gentlemen, finally, I know that there is a mixture of -- of moral views, of ethical views, of religious views in our community. And sometimes people just flat don't feel comfortable judging somebody else, for whatever reason. If anybody here has a difficult time or thinking they would have a difficult time sitting in that box and passing judgment in this case, I would ask that you please speak up now.

Three venirepeople answered that they would have a problem passing judgment in this case, including Juror No. 5. Appellant also asked if anyone felt they could not be in trial past 5 p.m. Juror No. 5 again answered affirmatively. During individual voir dire examination outside the presence of the other venirepeople, the Court examined Juror No. 5 and asked why she did not believe she could sit in judgment in this case:

[THE COURT]: In a case of this nature, do you just find it very hard to sit and hear a case of this nature?

[JUROR #5]: Yeah.

[THE COURT]: Is there a reason behind that?

[JUROR #5]: Well, I don't know. I guess I'm very sentimental or whatever. I don't want to make decisions for somebody else, to judge somebody else.

[THE COURT]: That's why we call jurors. I know these are hard times, I know. I think--I think jurors have a very difficult job. But I think jurors take it seriously. Remember, it's an allegation.

[JUROR #5]: Uh-huh.

[THE COURT]: Nothing has been proven to you yet.

[JUROR #5]: Uh-huh.

4

| | |
|---|---|
| [THE COURT]: | That's why these gentlemen take their job seriously, and that's why this man over there takes his job seriously in defending that man. |
| [JUROR #5]: | Right. |
| [THE COURT]: | But we call these jurors because they are the ones who have to decide these matters.  They didn't ask me to decide it.  So they want a trial by jury, and the beauty of this country is, we can call citizens of this community, bring them in and they decide. |
| [JUROR #5]: | That's right. |
| [THE COURT]: | What do you think?  Do you think you can handle that? |
| [JUROR # 5]: | Well, in – I guess, but also I don't think I can sit too long.  You know, I'm full of arthritis all over my left side and in my – I can't drive very good, you know, and my hands are . . . . |
| [THE COURT]: | I give breaks.  You are not going to sit here all day long. |
| [JUROR #5]: | Oh, okay. |

.        .        .

| | |
|---|---|
| [THE COURT]: | Think you can do it? |
| [JUROR #5]: | Yeah, I guess I'll try. |

Following the conclusion of individual voir dire, Appellant moved to strike Juror No. 5 for cause.  The trial court denied the strike.  Appellant then requested an additional peremptory strike and the trial court responded "[w]e'll see if we get there."  Later, Appellant used a peremptory strike to remove Juror No. 5 from the venire, noting on the record that he "was forced to exercise a peremptory strike on Juror Number 5 who came in and initially indicated she could not pass judgment and had a problem with staying after 5:00 p.m."  He further stated that had he been given the additional peremptory strike, he would have used it on Juror No. 1.  The

5

trial court acknowledged these statements on the record.

## DISCUSSION
### *Failure to Strike Juror for Cause*

In Issue One, Appellant contends that the trial court erred by forcing him to exercise a peremptory strike against Juror No. 5 when the court should have struck her for cause at his request. We disagree.

### Standard of Review

"A challenge for cause is an objection made to a particular juror, alleging some fact which renders the juror incapable or unfit to serve on the jury." TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(West 2006). We review the trial court's denial of a challenge for cause for abuse of discretion, looking at the voir dire record as a whole to determine whether sufficient evidence underpins the trial court's ruling. *See Stewart v. State*, 162 S.W.3d 269, 280 (Tex.App.--San Antonio 2005, pet. ref'd); *Roman v. State*, No. 08-11-00057-CR, 2012 WL 5287933, at * 6 (Tex.App.--El Paso Oct. 24, 2012, no pet.)(not designated for publication). The Texas Code of Criminal Procedure provides that a juror may be struck for cause where, *inter alia*, he or she has "a bias or prejudice in favor of or against the defendant[,]" TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(9), that "would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law." *Davis v. State*, 329 S.W.3d 798, 807 (Tex.Crim.App. 2010). "The proponent of a challenge for cause has the burden of establishing that the challenge is proper." *Id*.

"Bias means an inclination toward one side of an issue rather than to the other leading to the natural inference that the juror will not act with impartiality." *Bell v. State*, 233 S.W.3d 583, 589 (Tex.App.--Waco 2007, pet. dism'd, untimely filed)[Internal quotation marks omitted]. "Prejudice means prejudging." *Id*. [Internal quotation marks omitted]. "When a juror states he

6

is unable to sit in judgment of another," that amounts to an expression of prejudice against a finding of guilt, which justifies a challenge for cause. *See Malone v. State*, No. B14-87-269-CR, 1987 WL 25837, at *2 (Tex.App.--Houston [14th Dist.] Dec. 3, 1987, pet. ref'd)(not designated for publication)(holding that inability to sit in judgment of another constituted implicit bias in favor of defendant and against state); *see also Phillips v. State*, 661 S.W.2d 226, 228-29 (Tex.App.--Houston [1st Dist.] 1983, pet. ref'd).

Where bias or prejudice exist as a matter of law, the prospective juror "must be excused when challenged, even if he states that he can set his bias aside and provide a fair trial . . . ." *Anderson v. State*, 633 S.W.2d 851, 854 (Tex.Crim.App. 1982). "However, it is left to the discretion of the trial court to first determine whether or not bias exists." *Id.* Before dismissing a venire member for cause, the court must explain the law to the venire member, he or she must understand the law's requirements, and the venire member must indicate that he or she cannot "overcome his or her prejudice well enough to follow the law." *Davis*, 329 S.W.3d at 807. "We accord particular deference to the trial court's ruling when a venire member vacillates in his or her answers." *Id.* at 813.

### Preservation of Error

As a threshold matter, the State urges us to overrule Appellant's juror strike challenge as unpreserved under the Rules of Appellate Procedure for two reasons. First, the State argues that Appellant's failure to specify why Juror No. 5 was objectionable rendered his objection unpreserved. *See Boulware v. State*, No. 07-06-0386-CR, 2008 WL 794807, at *4 (Tex.App.--Amarillo Mar. 26, 2008, no pet.)(mem. op., not designated for publication)(challenge to jurors in which attorney only stated juror numbers insufficient to preserve error). Second, the State maintains that Appellant failed to preserve error by ensuring the trial court actually ruled on his

7

request for an additional peremptory strike. *Riddle v. State*, No. 2-02-157-CR, 2003 WL 1786025, at * 1 (Tex.App.--Fort Worth Apr. 3, 2003, pet dism'd, untimely filed)(mem. op., not designated for publication), *overruled on other grounds by Holmes v. State*, 248 S.W.3d 194, 202 (Tex.Crim.App. 2008)(where appellant fails to show request for additional peremptory strikes was denied, error is not preserved). We find that error was properly preserved on this issue.[1]

"To preserve error for a trial court's erroneous denial of a challenge for cause, appellant must show that: (1) he asserted a clear and specific challenge for cause; (2) he used a peremptory challenge on the complained-of venire member; (3) his peremptory challenges were exhausted; (4) his request for additional strikes was denied; and (5) an objectionable juror sat on the jury." *Davis*, 329 S.W.3d at 807. Although trial counsel only identified the juror by her name and number, it was apparent from context that she was being challenged for her inability to sit in judgment of others. This is confirmed later in the record, when prior to seating the jury, trial counsel explained his reasons for wishing to strike Juror No. 5, and the court acknowledged that it understood counsel's reasoning. Likewise, although the court initially deferred ruling on granting additional peremptory strikes, its failure to grant any additional strikes constituted an implicit denial of Appellant's request, a fact that is also confirmed by counsel's statements on the record that the court denied the request, followed by the court's acknowledgment of Appellant's statement. As such, error is preserved and we properly review the merits of Appellant's claim.

**Analysis**

Turning to the substance of Appellant's argument, we find that the trial court did not need to strike Juror No. 5 for cause as a matter of law. A venire member's statement that she cannot

---

[1] The State also urges us in a footnote to overrule Appellant's Issue One on the basis that the argument is inadequately briefed under TEX.R.APP.P. 38.1(i) for failure to cite to authority and making conclusory arguments. Although we note Appellant's briefing on Issue One is not clear as it could have been, Appellant identified and applied relevant case law, making the issue adequately briefed under the Rules.

overcome her prejudice or bias must be unequivocal; if the venire member vacillates, we grant the trial court almost total deference in its decision, since that court is in a better position to assess the potential juror's credibility, sincerity, and demeanor than we are. *Davis*, 329 S.W.3d at 807. Where a venire member indicates that she is willing to serve after she has been explained the law and indicates she can move past her bias and prejudices, the trial court does not abuse its discretion in refusing to strike her. *Id*. Here, although Juror No. 5 initially indicated that she would be unable to sit in judgment of Appellant, after the trial court explained the role of a juror to her and assured her that the court would take breaks, she told the court that she would be willing to serve. As such, the trial court did not abuse its discretion in failing to strike her for cause.

Issue One is overruled.

### *Admissibility of Standard Field Sobriety Test Results*

In Issue Two, Appellant asserts that the trial court abused its discretion by admitting the results of the standard field sobriety tests under TEX.R.EVID. 702 because Officer Gonzalez improperly administered the tests. We again disagree.

### Standard of Review

We review a trial court's evidentiary rulings for abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000). A trial court abuses its discretion when its ruling falls outside "the zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App. 1990)(op. on reh'g). "Error in the admission of evidence constitutes nonconstitutional error." *Plouff v. State*, 192 S.W.3d 213, 222 (Tex.App.--Houston [14th Dist.] 2006, no pet.). We disregard nonconstitutional errors unless they affect the defendant's substantial rights. TEX.R.APP.P. 44.2(b). "[S]ubstantial rights are not affected by the erroneous

admission of evidence if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex.Crim.App. 2001)[Internal quotation marks omitted].

## Analysis

TEX.R.EVID. 702 provides for the admission of expert opinion testimony based on "scientific, technical, or other specialized knowledge" where it is helpful to the trier of fact. The proponent of the expert testimony evidence must establish by clear and convincing evidence that it is reliable, i.e. (1) that the underlying scientific theory is valid, (2) the technique applying the theory is valid, and (3) the technique was properly applied on the occasion in question. *See Weatherred*, 15 S.W.3d at 542; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992). "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." TEX.R.EVID. 701.

Officer Gonzalez performed three standard field sobriety tests on Appellant: the horizontal gaze nystagmus test, the one-leg stand test, and the walk-and-turn test. The horizontal gaze nystagmus test, which tracks "the inability of the eyes to smoothly follow an object moving horizontally across the field of vision, particularly when the object is held at an angle of forty-five degrees or more to the side[,]" is a scientific test subject to Rule 702 and the strictures of *Kelly*. *See Plouff v. State*, 192 S.W.3d 213, 218-19 (Tex.App.--Houston [14th Dist.] 2006, no pet.). However, Appellant does not appear to challenge the administration of the nystagmus test. Instead, Appellant focuses the majority of his argument in the brief on the fact that the standard field sobriety tests were unreliable because he had sustained a leg injury. Since a leg injury

would not presumably affect the nystagmus test, we construe Appellant's brief as bringing a challenge only to the one-leg-stand and walk-and-turn tests. *See Horton v. State*, No. 2-09-158-CR, 2010 WL 3433776, at \*2-\*3 (Tex.App.--Fort Worth Aug.31, 2010, no pet.)(mem. op., not designated for publication)(no challenge brought to nystagmus test where defendant's claim that officer failed to question her on her weight irrelevant to issue of nystagmus).

In contrast with the nystagmus test, "the one-leg-stand and walk-and-turn tests are not grounded in science." *Id*., at \*3. Rather, "an officer's testimony about a suspect's coordination, balance, and any mental agility problems exhibited during the one-leg-stand and walk-and-turn tests are observations grounded in common knowledge . . . ." *Id.*; *see also Plouff*, 192 S.W.3d at 223-24 ("The one-leg stand and walk-and-turn tests are grounded in the common knowledge that excessive alcohol consumption can cause problems with coordination, balance, and mental agility . . . ."). As such, *Kelly* is inapposite, and the lay witness opinion rule under TEX.R.EVID. 701 governs the admission of testimony pertaining to these tests. *Id.* at 224; *but see Meier v. State*, No. 05-08-00486-CR, 2009 WL 765490, at \*7 (Tex.App.--Dallas Mar. 25, 2009, no pet.)(not designated for publication)(under some circumstances, use of words such as "clues," "certified," "pass," and "fail" may give lay officer testimony "aura of scientific validity" that could convert lay testimony into expert testimony as perceived by jury).

Here, Officer Gonzalez did not use words that gave her testimony an "aura of scientific validity" that would subject it to the *Kelly* requirements. Instead, the testimony consisted of her demonstrating the test for jurors and relaying her assessment of Appellant's mental faculties and physical coordination as he performed those tasks. Because Officer Gonzalez's opinion that Appellant's failure on the one-leg-stand and walk-and-turn tests showed he was intoxicated was rationally based on her perceptions, her testimony was admissible under Rule 701. The trial

court did not abuse its discretion by allowing her to testify.

Even if Officer Gonzalez's testimony did veer into the realm of expert testimony, error, if any, would have been harmless. Three EPPD officers testified that Appellant smelled like alcohol and that he appeared to be swaying during the stop. Appellant admitted to having drank alcohol prior to being stopped and admitted to pouring a bottle of Bud Light out onto the pavement during the traffic stop. Appellant also blew a .23 as recorded in the Intoxilyzer records, the results of which Appellant did not challenge on appeal. Taking the evidence in the aggregate, we are convinced that testimony pertaining to the walk-and-turn and one-leg-stand sobriety tests only had a slight effect on the jury's ultimate verdict. *Solomon,* 49 S.W.3d at 365.

Issue Two is overruled. The trial court's judgment is affirmed.


_/s/ Yvonne T. Rodriguez_____

June 30, 2014                                                    YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)