

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00212-CR

DAVID WATSON, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 364th District Court
Lubbock County, Texas
Trial Court No. 2012-435,164, Honorable Bradley S. Underwood, Presiding

June 14, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

Appellant David Watson appeals from his conviction by jury of the offense of sexual assault[1] and the resulting sentence of ten years of imprisonment. His two issues contend the trial court erred by denying his challenge for cause to a venire member and by admitting testimony over his objection. Finding no reversible error, we will affirm.

---

[1] TEX. PENAL CODE ANN. § 22.011(a)(1) (West 2016).

Background

Because appellant does not challenge the sufficiency of the evidence to support his conviction, we will relate only those facts necessary to an understanding of his appellate issues.

Appellant was indicted for aggravated sexual assault of Raven Winters.[2] The indictment alleged appellant intentionally or knowingly caused Winters' sexual organ to contact his sexual organ without Winters' consent. In so doing, the indictment alleged, appellant did "by acts or words threaten to cause, or place, [Winters] in fear that death, serious bodily injury, or kidnapping would be imminently inflicted on [her]."  It also contained a deadly weapon allegation, asserting appellant used or exhibited a knife the manner of use or intended use of which was capable of causing death or serious bodily injury. The jury charge instructed the jury on the lesser-included offenses of sexual assault and assault.

Winters testified she met appellant in a class the two shared at Texas Tech University. They struck up a friendship that eventually included some sexual acts. The two also engaged in sexual conversations via social media and texts. When Winters later told appellant she was dating someone else, appellant became angry and "shoved"

---

[2] The indictment used the pseudonym Raven Winters to protect the victim's identity.  We will refer to the victim with the same pseudonym.  Before the jury, the victim was identified with her actual name. In addition to the offense for which appellant was tried, the indictment contained three other counts, all arising from the same occasion. They alleged penetration of Winters' sexual organ by appellant's sexual organ, penetration of Winters' mouth by appellant's sexual organ and contact by appellant's mouth with Winters' sexual organ.

her.  She testified she became afraid of appellant after that incident and told friends of her fear.  She testified she "was scared of him" and "tried to avoid him."

Some months later, appellant sent Winters a text stating, "It would be in your best interest if you would come over tonight." She went to his home.  Appellant was intoxicated, yelled at her, and told her he had recordings of their previous sexual acts. He threated to publish the pictures and videos on the internet.  Appellant called a friend who confirmed to Winters that appellant had the videos and was willing to put them on the internet. Winters testified that for the next three or four hours, appellant forcibly performed sexual acts on her and forced her to perform sexual acts on him.  Appellant also recorded these events; the video of their sexual acts was admitted and played for the jury.  Winters testified that appellant displayed a knife, but no knife was found.

Appellant did not testify at trial but presented a defensive theory contending that their sexual acts were consensual, or at least that Winters' participation was not compelled by physical force or the threat of force.  The jury found appellant guilty of the lesser-included offense of sexual assault and assessed punishment as noted.

Analysis

Challenge for Cause

In his first issue, appellant contends the trial court erred when it denied his challenge for cause of venire member Pricer and later requests for additional peremptory strikes.  The State argues the challenged juror was "a mere vacillating juror" and the trial court did not abuse its discretion.

3

A challenge for cause is an objection made to a particular juror, alleging a fact that renders the juror incapable or unfit to serve on the jury. TEX. CODE CRIM. PROC. ANN. art. 35.16(a) (West 2014). Among the reasons for which a defendant may challenge a prospective juror for cause is that the prospective juror "has a bias or prejudice against any of the law applicable to the case on which the defense is entitled to rely[.]" TEX. CODE CRIM. PROC. ANN. art. 35.16(c)(2).

The test is "whether the bias or prejudice would substantially impair the prospective juror's ability to carry out his oath and instructions in accordance with law." *Feldman v. State,* 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). Before a prospective juror may be excused for cause on this basis, the law must be explained to the juror and the juror must be asked whether she can follow that law regardless of personal views. *Feldman*, 71 S.W.3d at 744 (*citing Jones v. State,* 982 S.W.2d 386, 390 (Tex. Crim. App. 1998)). The proponent of a challenge for cause has the burden to show that the challenge is proper. *Feldman,* 71 S.W.3d at 747. To establish a proper challenge for cause, its proponent must show that the prospective juror understood the requirements of the law and could not overcome her prejudice well enough to follow it. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016) (*citing Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010)). When reviewing a trial court's decision to grant or deny a challenge for cause, we look at the entire record. *Feldman,* 71 S.W.3d at 744.

During defense counsel's voir dire, he visited with the panel in some detail regarding the proof necessary to show that sexual contact occurred without the consent of the victim. *See* TEX. PENAL CODE ANN. § 22.011(a)(1)(C). He drew his explanations of the law from the provisions of subsections (b)(1), (2) and (7) of Penal Code section

22.011. *See* TEX. PENAL CODE ANN. § 22.011(b)(1), (2) and (7). Sometimes, in his discussions of compulsion by force or threat of force, he referred to "physical force," and other times, simply "force."[3]

When he inquired of panel member Pricer about her attitude toward the law's "force or threat of force" requirement to prove lack of consent, she expressed the opinion that "no means no, stop now." In essence, she expressed the concept that force is demonstrated when an actor proceeds with sexual activity after being told "no." Counsel explained, not for the first time, that while "no means no" is a valid concept, "what the law says is that it's not a sexual assault unless there's a use of physical force or the threat of use of physical force." Pricer responded, "I'm having an issue with it." Then asked if her "problem with it be such that it might affect your ability to . . . be neutral on this jury? Would you favor one side or the other?", Pricer said, "Well, again, that's hard to, you know - - I - - no. I can look at the evidence as is presented and make a decision based on that." When the next panel member in line, Sauceda, also said she had "an issue," and Pricer indicated her agreement with Sauceda's explanation of her opinion, counsel asked the two whether their conviction was "strong enough that it might influence how you vote on the jury[.]" Sauceda said it would; Pricer responded, "No."

---

[3] In one instance, a member of the venire (not the challenged member), pointed out to counsel that the term force had not been defined for them. Counsel agreed with her, and said the term "doesn't have a definition." Later, in an exchange with another panel member, counsel limited the requirement to a showing of physical force. He then said, "I may have spoken too soon about there not being a definition. It talks about physical force."

Pricer later was summoned to the bench for another extended discussion. There, in response to defense counsel's questions, she reiterated that, "The fact that it's happening after you say no is use of force. He doesn't need a weapon. His hands are a weapon. His body is a weapon. The fact that you've said no and it continues in my mind is force." The State then elicited Pricer's agreement that "force has to be proven," and that she would require the State to prove it. In response to the court's question asking if she would "hold the State to [its] burden of proof," Pricer responded, "Yes." And when the court further asked, "And will you acquit if they don't prove it? Could you find him not guilty?", she responded, "I see no choice." When defense counsel took up the questioning again, in response Pricer again indicated that in her mind, force is shown when sexual activity continues after a party says, "no."

In support of the challenge for cause, the defense argued "the scenario she is describing legally does not constitute force, and so it's tantamount to her saying that she won't require the State to prove that element of the offense." The court disagreed.

We see no abuse of discretion in the trial court's denial of the challenge for cause. Pricer never said she could not, or would not, follow the law as it was explained to her. She consistently indicated she would require the State to show force or a threat of force to prove lack of consent. Appellant asserts that, to prove compulsion by force or a threat of force, the law requires more than continued sexual activity after a party says "no." We need not address that question because, assuming appellant is correct, that view of the law was never explained to Pricer. She was never told that the law requires more than continued sexual activity after a party objects, and asked if she could follow that requirement. As the Court of Criminal Appeals reiterated only recently,

6

the proponent of a challenge for cause "must show that the prospective juror understood the requirements of the law and could not overcome her prejudice well enough to follow it." *Buntion*, 482 S.W.3d at 84. While the defense clearly disagreed with Pricer's personal view of facts that would meet the statutory requirement, the trial court was not required to equate that disagreement with an unwillingness on Pricer's part to follow the law.

Moreover, when the record demonstrates a vacillating or equivocal prospective juror, we accord great deference to the trial judge who had the better opportunity to see and hear the person. *Swearingen v. State*, 101 S.W.3d 89, 99 (Tex. Crim. App. 2003). The trial court is able to consider important factors such as demeanor and tone of voice not apparent from review of a cold record. *Banda v. State*, 890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *Bell v. State*, 233 S.W.3d 583, 591 (Tex. App.—Waco 2007, pet. dism'd).

For both reasons, we overrule appellant's first issue.

Admission of Evidence

In his second issue, appellant argues the trial court erred by allowing Winters to testify of appellant, "He said, 'I've done this three times before, and do you think I can't get away with it now?' It was something -- I can't remember exact lines, but he said 'I've done this three times before.'" Appellant objected under Rules of Evidence 404(b) and 403. The State argued, "[w]e're offering a statement on his behalf as a means of intimidation or coercion against [Winters]." The court overruled appellant's objections.

We review a trial court's admission of extraneous offense evidence under an abuse of discretion standard. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). A trial court abuses its discretion if its ruling is outside the zone of reasonable disagreement. *Id.; see Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "An appellate court would misapply the appellate abuse of discretion standard of review by reversing a trial court's admissibility decision solely because the appellate court disagreed with it." *Powell,* 63 S.W.3d at 438.

Error in admitting evidence concerning extraneous offenses is reviewed under Rule 44.2(b) of the Texas Rules of Appellate Procedure. *Casey*, 215 S.W.3d at 885. Under that standard, an appellate court must disregard a nonconstitutional error that does not affect a criminal defendant's "substantial rights." TEX. R. APP. P. 44.2(b). An error affects a substantial right of the defendant when the error has a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). A criminal conviction will not be reversed for nonconstitutional error if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. TEX. R. APP. P. 44.2(b); *Johnson v. State,* 967 S.W.2d 410, 417 (Tex. 1998).

In making this determination, the appellate court should consider the entirety of the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). The reviewing court can also consider the jury instruction given by the trial judge, the State's theory

8

and any defensive theories, closing arguments and voir dire, if material to appellant's claim. *Id.*

Assuming, without consideration, the trial court erred by admitting the evidence of appellant's statement over his objections, we find the error harmless with regard to the jury's verdict in the guilt-innocence phase.

The court's charge at the conclusion of the guilt-innocence phase instructed the jurors not to consider evidence tending to show appellant committed extraneous offenses or bad acts other than the charged offense unless jurors believed beyond a reasonable doubt that appellant committed the acts, if any, and instructed jurors to consider the evidence, if at all, only for the purpose of determining appellant's intent, preparation or plan, if any, in connection with the charged offense. Our rules of evidence recognize that an accused person is entitled to be tried on the offense currently charged "and not on some collateral crime, or for being a criminal generally." *Sims v. State,* 273 S.W.3d 291, 294-95 (Tex. Crim. App. 2008) (citation omitted). Evidence of extraneous offenses is thus generally inadmissible at the guilt phase of trial to prove the defendant acted in conformity with a criminal character. Such evidence is "inherently prejudicial, tends to confuse the issues, and forces the accused to defend himself against charges not part of the present case against him." *Id.*

The evidence appellant challenges in this case, however, carries only a remote possibility it contributed to his conviction. The evidence came only from a single witness, Winters, and she cited only a single source for its information, appellant's statement to her. The record presents no reason why jurors would have believed

Winters' testimony regarding appellant's statement but disbelieved her testimony describing his assault of her. The nature of the extraneous-offense evidence thus weighs against a finding of harm.

The state of the evidence supporting the jury's verdict also weighs against a finding of harm. As noted, the contested issue at trial was whether appellant's contact with Winters' sexual organ was without her consent. In addition to Winters' testimony that she was "scared of" appellant, that she regarded his text message as threatening, that he grabbed her and forced her down in her chair at a point, and that she "was scared he was going to hurt me," the jury had before it the video appellant made of his penile contact with her sexual organ.

As appellant's brief describes it, the record shows "Appellant retrieved a video camera and ordered the complainant to strip naked and perform oral sex on him, which she did. Appellant told the complainant that if she did not please him orally, he would penetrate her vaginally. The complainant told the jury that she was afraid Appellant would strike her due to his size and his loud, angry demeanor. Although Appellant never struck the complainant, Appellant did put on a condom and begin to have sexual intercourse [with] her."

The video, some thirty minutes in length, also depicts that Winters whimpered and cried much of the time during their activities. Virtually all her actions depicted on the video were directed by appellant, usually in a forceful and loud voice. As examples, on one occasion, he yelled at her when she was slow to remove her panties, and on another, he commanded her to "smile for the camera." As she performed oral sex, he

10

repeatedly and forcefully exhorted her to perform better. During oral sex, appellant on occasion placed his hand on Winters' head, appearing to pull her head toward his body. At the time appellant tried to initiate vaginal intercourse, Winters can be heard saying "No, no, no" to which appellant responded, "You don't have a choice." Winters then can be heard crying out in pain, saying "ow" several times.

The State made brief reference to appellant's statement in its closing argument. For the reasons we have described, however, we find it unlikely that Winters' testimony of appellant's statement to her had more than a slight effect on the jury's conviction of appellant of the lesser-included offense of sexual assault. *Johnson,* 967 S.W.2d at 417.

During the punishment stage of trial, witnesses were asked, on several occasions during cross-examination, questions relating to appellant's statement that he had "done this three times before." The jury thus heard this information several times during the punishment phase.

The statement was mentioned only once by defense counsel during closing argument when he challenged Winters' credibility regarding the statement. And, additional punishment evidence was offered. A police officer testified to the recovery of images taken from appellant's computer, all of which were sexual in nature and some of which he agreed included "sexually assaultive material." Too, it must be considered that the jury retained the video evidence in mind as they considered punishment.

The question of the likely impact of the extraneous-offense evidence during the punishment stage presents a closer question than at the guilt-innocence stage. Nonetheless, having considered the record as a whole and the relevant factors, we

11

have fair assurance that appellant's statement had no more than a slight effect on the jury's punishment decision. We resolve appellant's second issue against him.

Conclusion

Having overruled each of appellant's issues, we affirm the judgment of the trial court.

James T. Campbell
Justice

Do not publish.