

# NUMBER 13-18-00584-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JAMES EVERETT GRANT,**                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                  **Appellee.**

---

### On appeal from the 249th District Court
### of Johnson County, Texas.

---

# MEMORANDUM OPINION
**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Benavides**

By three issues, appellant James Everett Grant challenges the judgment

convicting him of delivery of a controlled substance, less than one gram (enhanced), a

third-degree felony.   TEX. HEALTH & SAFETY CODE ANN. § 481.112(b); TEX. PENAL CODE

ANN. § 12.42.   By two issues, Grant argues that his motion to suppress was erroneously

denied; his third issue complains that he was denied a fair and impartial jury.   We affirm.[1]

## I.   BACKGROUND

Grant was arrested after Commander Larry Sparks of the Burleson Police Department observed what he believed to be a drug transaction between Grant and a woman in a parking lot.   Grant was searched and arrested without a warrant.   Defense counsel filed a motion to suppress.

Sparks was the only witness at the suppression hearing.   Sparks testified that he had been watching Grant's house because the house was known in the neighborhood to be a place where drugs were sold, and Grant had previous drug selling history with the department.   That day, Sparks drove by Grant's house and saw him leaving in his car. Sparks followed Grant to Walmart.   Sparks watched Grant stop near the service station in the Walmart parking lot.   He saw a woman approach Grant's car from the passenger side, put her head and hand in the car, and leave with a small object in her hand.   The whole transaction took seconds.   Sparks testified, that based on his experience, what he saw looked like a drug buy in which the woman purchased a controlled substance from Grant.   Sparks requested back-up.   As a result of his observations, Sparks stopped Grant after he got out of his car and before he went into Walmart.   After Sparks detained Grant, he talked to the woman.   When Sparks spoke to the woman and asked her to give him "the dope," she handed him a cigarette package in which there was a packet of

---

[1] This cause is before the Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001.   Because this is a transfer case, we apply precedent of the Tenth Court of Appeals to the extent it differs from our own.   *See* TEX. R. APP. P. 41.3.

2

methamphetamine for which she said she paid "Jimmy" $40. According to Sparks, Grant is known as "Jimmy." Sparks went back to Grant, patted him down, found $40 in his front pant pocket, and arrested him. The trial court denied the motion to suppress.

Grant was convicted after a jury trial. He pleaded true to punishment enhancements based upon two previous state jail felony convictions, one of which was the sale of a controlled substance. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115. The jury assessed punishment at ten years' imprisonment in the Texas Department of Criminal Justice–Institutional Division and a fine of $10,000. This appeal followed.

## II. MOTION TO SUPPRESS

By two issues, Grant argues that the trial court erred by denying his motion to suppress. First, Grant contends that Sparks did not have reasonable suspicion to detain Grant. Secondly, Grant argues that Sparks did not have probable cause nor an exception to the warrant requirement to conduct a search of Grant's person. Because the inquiries are related, we address them together.

### A. Standard of Review

"Appellate courts review a trial court's ruling on a motion to suppress by using a bifurcated standard, giving almost total deference to the historical facts found by the trial court and analyzing de novo the trial court's application of the law." *State v. Cuong Phu Le*, 463 S.W.3d 872, 876 (Tex. Crim. App. 2015); *Gonzalez v. State*, 501 S.W.3d 283, 285 (Tex. App.—Corpus Christi–Edinburg 2016, no pet.). We afford the trial court the same deference on its rulings on the application of the law to questions of fact and to mixed questions of law and fact if resolution of those questions depends on an evaluation

3

of credibility and demeanor. *Gonzalez*, 501 S.W.3d at 285. However, for mixed questions of law and fact that do not fall within that category, we review de novo. *Id.*

**B.    Reasonable Suspicion, Probable Cause, and Exception to Warrant Requirement**

**1.    Reasonable Suspicion**

"Under the Fourth Amendment, a warrantless detention of the person that amounts to less than a full-blown custodial arrest must be justified by a reasonable suspicion." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011) (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).   A police officer has reasonable suspicion to detain if he has "specific, articulable facts" that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is or has been engaged in criminal activity. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 21–22 (1965)).   This standard is an objective one that looks to whether there was an objectively justifiable basis for the detention. *Id.*   It also looks to the totality of the circumstances; those circumstances may all seem innocent enough in isolation, but if they combine to reasonably suggest the imminence of criminal conduct, an investigative detention is justified. *Id.*   "[T]he relevant inquiry is not whether particular conduct is innocent or criminal, but the degree of suspicion that attaches to particular non-criminal acts." *Id.*   In deciding whether an officer had a reasonable suspicion, we examine the facts that were available to the officer at the time of the investigative detention. *Brodnex v. State*, 485 S.W.3d 432, 437 (Tex. Crim. App. 2016); *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997).

Here, Sparks thought he observed a drug buy based upon his nineteen years' experience in law enforcement, and fifteen years as part of a drug task force. Based

upon Sparks's knowledge of Grant's history and Sparks's experience observing drug buys, we hold that Sparks's observations of the events supported reasonable suspicion to detain Grant for the ten minutes it took to confirm or dispel Sparks's reasonable suspicion. *See Roy v. State*, 55 S.W.3d 153, 157 (Tex. App.—Corpus Christi–Edinburg 2001, pet. dism'd); *see also Cooper v.* State, No. 14–07–00974–CR, 2008 WL 4915952, *3 (Tex. App.—Houston [14th Dist.] Nov. 18, 2008, no pet.) (mem. op., not designated for publication) (affirming a finding of reasonable suspicion to detain person observed under circumstances that appeared to be an imminent drug transaction). The trial court did not abuse its discretion in denying the motion to suppress on this issue.

We overrule Grant's first issue.

### 2. Probable Cause and Exception to Warrant Requirement

The Fourth Amendment generally makes a warrantless arrest unreasonable per se unless the arrest fits into one of a "few specifically defined and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). "A police officer may arrest an individual without a warrant only if probable cause exists with respect to the individual in question and the arrest falls within one of the exceptions" set out in articles 14.01 to 14.04 of the code of criminal procedure. TEX. CODE CRIM. PROC. ANN. art. 14.01–14.04; *Torres v. State*, 192 S.W.3d 899, 901 (Tex. Crim. App. 2005); *Lunde v. State*, 736 S.W.2d 665, 666 (Tex. Crim. App. 1987). When a defendant is arrested without a warrant, the burden in a motion to suppress is on the State to prove the reasonableness of the search or seizure. *See State v. Martinez,* 569 S.W.3d 621, 624 (Tex. Crim. App. 2019).

5

Article 14.01 of the code of criminal procedure permits a peace officer to arrest one who commits a crime in his presence. TEX. CODE CRIM. PROC. ANN. art. 14.01. Thus Grant's arrest was permissible without a warrant if Sparks had probable cause. *See Torres*, 192 S.W.3d at 901.

"Probable cause exists where the police have reasonably trustworthy information sufficient to warrant a reasonable person to believe a particular person has committed or is committing an offense." *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997); *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991). Probable cause deals with probabilities; "it requires more than mere suspicion but far less evidence than that needed to support a conviction or even that needed to support a finding by a preponderance of the evidence." *Guzman*, 955 S.W.2d at 87; *see also Brinegar v. United States*, 338 U.S. 160, 174–75 (1949).

After confirming that the woman purchased drugs from Grant, obtaining the drugs from her, in combination with his observations, Sparks had probable cause to arrest Grant. With an arrest, Sparks has the right to search Grant. However, Grant notes that Sparks searched him *before* he arrested Grant. However, a search incident to arrest that precedes the arrest by moments does not offend the constitution as long as probable cause exists. *See Williams v. State*, 726 S.W.2d 99, 100–01 (Tex. Crim. App. 1986) (citing *Rawlings v. Kentucky*, 448 U.S. 98, 110–11 (1980)). It is "irrelevant that the arrest occurs immediately before or after the search, as long as sufficient probable cause exists for the officer to arrest before the search." *State v. Ballard*, 987 S.W.2d 889, 892 (Tex. Crim. App. 1999). Here, Sparks saw the transaction, confirmed that Grant sold "dope,"

6

and confirmed that the buyer gave Grant $40, which was later found in Grant's front pocket. We hold that the trial court did not err in denying the motion to suppress.

We overrule Grant's second issue.

## III. CHALLENGES FOR CAUSE

Grant's third issue complains that he was denied his Sixth Amendment right to a fair and impartial jury because the trial court denied his challenges for cause to panel members one and forty-four. Panel member one allegedly held a bias against those involved with drugs and panel member forty-four allegedly believed that police officers were more credible than others. The State agrees that Grant preserved this issue for appeal.

### A. Standard of Review

A defendant is entitled to a trial before an impartial jury. U.S. CONST. amend. VI; *Jacobs v. State*, 560 S.W.3d 205, 210 (Tex. Crim. App. 2018). The trial court has broad discretion in conducting voir dire. *Jacobs*, 560 S.W.3d at 212. We review a trial court's ruling on a challenge to a juror for cause for abuse of discretion. *Buntion v. State*, 482 S.W.3d 58, 84 (Tex. Crim. App. 2016); *Gonzales v. State*, 353 S.W.3d 826, 836 (Tex. Crim. App. 2011); *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

"We afford the trial court considerable deference, because it is in the best position to evaluate a prospective juror's demeanor and responses." *Russeau v. State*, 171 S.W.3d 871, 879 (Tex. Crim. App. 2005); *Bell v. State*, 233 S.W.3d 583, 590–91 (Tex. App.—Waco 2007, pet. ref'd, untimely filed). This deference is especially true when the trial court is faced with a vacillating or equivocating prospective juror. *Banda v. State*,

7

890 S.W.2d 42, 54 (Tex. Crim. App. 1994); *see Russeau*, 171 S.W.3d at 879; *King v. State*, 29 S.W.3d 556, 568 (Tex. Crim. App. 2000); *Bell*, 233 S.W.3d at 590. "The trial court is able to consider important factors such as demeanor and tone of voice that do not come through when reviewing a cold record." *Banda*, 890 S.W.2d at 54.

A prospective juror is challengeable for cause if he or she has a bias or prejudice against the defendant or against the law upon which either the State or the defense is entitled to rely. TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(9), (c)(2); *Buntion*, 482 S.W.3d at 83–84; *Gardner v. State*, 306 S.W.3d 274, 295 (Tex. Crim. App. 2009). The test is whether the prospective juror's bias or prejudice would substantially impair his ability to carry out his duties in accordance with his instructions and his oath. *Wainwright v. Witt*, 469 U.S. 412, 424 (1985); *Gardner*, 306 S.W.3d at 295.

The party seeking to exclude a prospective juror "must demonstrate, through questioning, that the potential juror lacks impartiality." *Buntion*, 482 S.W.3d at 84 (citing *Witt*, 469 U.S. at 423). "Before a prospective juror may be excused for cause on this basis, the law must be explained to him, and he must be asked whether he can follow that law, regardless of his personal views." *Id.*; *Feldman v. State*, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002).


**B.    Panel Member One**

Grant challenged panel member one for cause based on the panel member's personal experiences with the negative effects of drugs. The applicable portions of panel member one's voir dire included:

8

State: . . . have you had a personal experience, a close family member, close friend, or something like that that you've had a personal knowledge of or you've had a personal experience that you would be thinking about that would probably not make you a good person to serve on this jury? Okay. [Panel Member One].

Panel Member 1: I've actually raised a baby since she was two months old because of family members that did some horrible things to her from drugs and drug activities.

. . .

State: [Panel Member One], what do you think? Less than a gram, should that be illegal?

Panel Member 1: Drugs are drugs period.

. . .

The Court: Are there some persons that either side or the State and the Defense would like to have questioned individually as far as a possible challenge for cause? . . .

Defense counsel: Judge, the Defense would challenge for cause Number 1 and based on an answer with regard to drugs affecting that juror's life, their ability to be fair. . . .

. . .

Defense counsel: All right. Now [], what I understand, there was a question asked about, in particular with regards to drugs.

Panel Member 1: Un-huh.

Defense counsel: And if there was something in your past, something in your life or just some personal opinion you had that would prohibit you from basically being fair and just considering the evidence in this case. Is that true?

Panel Member 1: Yes.

9

Defense counsel: Okay. And what, if you don't mind, was that?

Panel Member 1: Well, my daughter that I'm raising is 17 now. Her biological mother was 16 and was wrapped up in the drugs. And I've been raising her since she was two months old.

Defense counsel: Is that something that you think would affect your ability to be fair and impartial in this case?

Panel Member 1: I would hope not, but it's there. . . .

Defense counsel: Okay. All right. Thank you.

State: . . . can you put aside what is happening in your personal life and make a decision based just on the evidence presented at trial?

Panel Member 1: Yes. . . . If I'm picked on the jury, my duty is to put everything aside and listen to the evidence and make a decision based on the evidence.

State: Okay.

Defense counsel: May I ask a few more questions?

The Court: Yes sir, you may do.

Defense counsel: Okay. And I know that basically to me you said it's there, and then you told the State you can put it aside.

Panel Member 1: Correct.

Defense Counsel: But are you confident? We want to make sure. Are you confident?

Panel Member 1: I'm a citizen. I'm ex-military, and I'll do my civil duty to listen to the case and make a decision based on the evidence that's presented to me.

Defense Counsel: Are you confident that you won't let anything that's happened in your life come into your

|  |  |
|---|---|
|  | deliberation, be part of the deliberation whether you can help it or not? |
| Panel Member 1: | Yeah. |
| Defense counsel: | Okay. Thank you, sir. |
| The Court: | And . . . if I can just ask the question another way. As a juror, when you listen to the evidence, do you think you can base your decisions solely upon the evidence presented and not be in any way influenced by something that may have happened in the past? |
| Panel Member 1: . . . | Yes, sir. |
| Defense counsel: . . . | Just for the record, I would move to strike [Panel Member One] for cause. His original answer was that it's there. And so I believe that it would affect his ability to be fair and impartial. |
| The Court: | Okay. The Court will deny the challenge for cause. |

Grant argues that the juror's original answer reflected a bias against drugs. However, after the Court and counsel explained a juror's duty, panel member one answered without equivocation that he would listen to the evidence and decide based on that evidence.

We hold that the trial court did not abuse its discretion in denying Grant's challenge for cause as to panel member one. *See United States v. Hinojosa*, 958 F.2d 624, 630–31 (5th Cir. 1992) (affirming trial court's denial of challenge for cause to prospective juror who had strong dislike for drug crimes but who stated she could follow the law); *cf. McCary v. State*, 477 S.W.2d 624, (Tex. Crim. App. 1972) (affirming trial court's grant of challenge to prospective juror who stated that his son-in-law was under indictment for

11

possession of a controlled substance and the case was "so close to my own family"); *see also United States v. Forte*, 65 Fed. App'x 508, at *7 (5th Cir. Mar. 24, 2003) (per curiam) (designated not for publication).

## C.      Panel Member Forty-Four

As part of his third issue, Grant argues that he was denied an impartial jury on the grounds that the trial court denied his challenge for cause to panel member forty-four. Panel member forty-four was allegedly biased in favor of the credibility of police officers. The voir dire related to that issue follows:

State:                         Is there anybody here who, whatever reason, thinks that they may hold–they may just believe a police officer will be more honest, they will give them more credibility without meaning to? . . . We got one, the police officer.

Panel Member 44:   Imagine that.   I work with them every day and I go to work with a lot of different people in the profession, and, you know, I believe most of the people I work with and around are good, you know, honest people, but I do understand that . . . it would be inappropriate for me to say that every police officer is going to be a great, you know, the same level I think I hold my co-workers to.

Defense counsel:    Right.

Panel Member 44:   So I know I can't just assume that person's going to be –I can't label that right away.   I do understand that. But I've got to be honest with saying that I have a little bit of bias leaning that way.

Panel member forty-four was asked additional individual questions:

Defense counsel:    I do have a couple of questions for you.    And I appreciate you were very very open and honest with [] us today.   Just a couple of questions to follow up, just to make sure.

12

Panel Member 44: Uh-huh.

Defense Counsel: You are currently a peace officer; is that right?

Panel Member 44: Yes, sir?

Defense Counsel: One of the questions was about how you would judge the credibility of potentially a peace officer testifying. And at the end, you said you can wait and judge their credibility like anybody else, but you did mention that it would be hard for you because of the officers that you know. And I just want you to be honest with us here.

Panel Member 44: Yeah.

Defense Counsel: Would it affect your ability to judge the credibility of other police officers that were to potentially testify because of your employment and the police officers you know?

Panel Member 44: That's a tough question to answer.

Defense counsel: I understand.

Panel Member 44: It is a tough question. . . . [I]f someone says something that would give me reason to doubt their credibility or say something, that well, you know, I'm obviously not going to stand. But with my previous, . . . the evidence, there's nothing they can do to sway that [] because, you know, police officers are human just like anyone else.

Defense counsel: Right, but what you're saying, what you're suggesting at least to me is that they would have to say something that–is it fair to say that a police officer may start off a little ahead in your book when you're judging credibility?

Panel Member 44: Yes.

Defense counsel: They would have to say something that didn't line up with–in a way that maybe another witness wouldn't; is that fair to say?

13

Panel Member 44: Yes. And also just the way I look at things too. Anybody that, regardless of who they are, that takes the stand has taken an oath, and I'm going to believe that person, any person because they are up there and they have taken that oath and, you know, the same way. But I do lean towards, you know favoring those that I know just because of my past experience.

Defense counsel: Okay. When you say "those that you know," that would be law enforcement, in general?

Panel Member 44: Yes.

Defense counsel: Okay. And so you do think that, even though you would try to set that aside, that would in some way potentially affect your ability to be impartial in that they would start a little ahead?

Panel Member 44: Probably start a little ahead, but I have no reason to believe I could not be impartial.

Defense counsel: Okay. But you do think that they would start off ahead just because of, again, your position, the people you know; is that fair?

Panel Member 44: The people I know. I know what it takes to, you know, get in that position.

Defense counsel: Right. Okay. Thank you, sir.

Panel Member 44: Yes, sir.

State: Couple questions. You said, if I understood you correctly, that basically anyone that takes the stand and takes an oath you're going to tend to . . . are they all going to basically be on the same level playing field since they took an oath, that that means something to you, or is it the law enforcement is going to have higher credibility than the other people?

Panel Member 44: I wouldn't be honest if I didn't say law enforcement would not have a higher credibility but–and I've never done this before. . . . So you mentioned earlier when

14

you're talking to us that we, as a jury, would have to make a determination on each witness as to what they think their credibility is. . . .  I think everybody starting out, you know, they took an oath to be honest.  I guess I'm expecting everything they tell me should be the truth.

State:  Okay.  Can you wait to decide somebody's credibility until after they take the stand and start to testify?

Panel Member 44:  Until after? . . . Sure.  And I think, too, a lot of it would be based on [], I have an opinion.  I may not know somebody's credibility, but I guess, as a jury we would have to talk as a group, if I'm not mistaken, and deliberations to determine, you know, what we all thought about somebody.

State:  Right.  I understand you're law enforcement and you kind of have a soft spot for law enforcement.  But can you wait?  I mean, I would anticipate that there would potentially be law enforcement testifying in this case potentially.  I mean, we've talked about that.  Can you wait to determine their credibility until after they have taken the stand and started to testify?

Panel Member 44:  I can put aside biases.  And you know, it's just . . . that's my feelings, just because I work side-by-side . . . in a certain profession and we have to, I guess, trust.  And that's kind of one of things that is built, so it's very hard to, you know, push my past relationships aside, but you know–

State:  Can you do it?

Panel Member 44:  Oh, I can, you know, weigh what I'm being told from a witness, absolutely, with the other facts and evidence that's being presented and their testimony, yes.  You know, it's tough but–it is.

State:  It is tough.

Panel Member 44:  It's a very tough position for me to be in here.

State:  Okay, but can you do it?

15

Panel Member 44: Sure, yes.

State: So you're telling this judge that even though you're in law enforcement and you know a lot of law enforcement that you can wait and decide this evidence just based on the evidence or you can decide this case just based on the evidence that's presented in trial; is that correct?

Panel Member 44: Sure. I would base it on the evidence that's presented in trial.

State: And . . . can you keep everyone on a level playing field regarding credibility and what they have to say until they take the stand and start to testify? Can you do that, just honestly? I'm not trying to trick you or anything but can you do that?

Panel Member 44: Honestly, it would be tough to answer that because I don't know–you know, I don't know who the potential witnesses would be, and I would just make that statement based upon what [defense counsel] asked was would anybody here give automatic credibility, I think kind of what the question was, you know, to peace officers in general, and I kind of do.

State: Okay. No further questions, your Honor.

. . .

Court: I know this is a hard question to answer, but are both sides going to start out even here on this case, or are you going to have a bias or leaning towards one side or the other before you even hear any evidence?

Panel Member 44: Oh, that's a tough question, but I don't have any bias one way or the other.

Court: And do you think you could judge the credibility of a law enforcement officer just as you would any other person up there testifying?

Panel Member 44: Yeah. Yes, I believe I can do that. I wanted to make

16

my, I guess, biases known with that question so . . . .

The State argued that panel member forty-four stated that he could put everything aside and base his decision based on the evidence. The trial court denied the challenge for cause.

The unequivocal belief by a venireman that a police officer would never lie while testifying has been found to constitute a bias against the defendant under Article 35.16(a). *See Hernandez v. State*, 563 S.W.2d 947, 950 (Tex. Crim. App. 1978). Otherwise, the trial court has discretion to determine whether or not bias or prejudice actually exists. *See Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. 1982). If the prospective juror is shown to be biased as a matter of law, he must be excused when challenged, even if he states that he can set aside his bias and provide a fair trial. *Tran v. State*, 221 S.W.3d 79, 83–84 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). The initial decision as to whether bias exists is for the trial court in its discretion. *Bell*, 223 S.W.3d at 590 (citing *Anderson v. State*, 633 S.W.2d 851, 854 (Tex. Crim. App. [panel op.] 1982): *see also Nunez v. State*, No. 13-17-00671-CR, 2019 WL 1831715, at *5 (Tex. App.—Corpus Christi–Edinburg April 25, 2019, no pet.) (mem. op., designated not for publication); *Watson v.* State, No. 07–14–00212–CR, 2016 WL 3355836, at *3 (Tex. App.—Amarillo June 14, 2016, no pet.) (affirming trial court's denial of challenge for cause) (mem. op., designated not for publication).

In *Nunez*, a juror equivocated about whether her knowledge of the defendant would prevent her from being fair and impartial. 2019 WL 1831715, at *5. The juror "stated that she underst[ood] the defendant's right to a fair trial and she indicated that she

17

would try to be impartial even though she was not completely certain of her ability to do so." *Id.* The trial court denied Nunez's challenge for cause and we affirmed, affording "great deference" to the trial court's discretion "because the trial court was in the best position to evaluate the prospective juror's answers and demeanor." *Id.*

The entire record of Panel Member forty-four's voir dire reveals a vacillating juror, not one disqualified as a matter of law. *See Banda*, 890 S.W.2d at 54; *Bell*, 223 S.W.3d at 590; *see also Nunez,* 2019 WL 1831715, at *5; *Watson*, 2016 WL 3355836, at *3. Accordingly, we are required to afford the trial court great deference in its judgment. We hold that that the trial court did not abuse its discretion in denying Grant's challenges for cause.

We overrule Grant's third issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.


GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed the
1st day of August, 2019.

18